266 Wis. 466 (1954)
BACHMANN, Plaintiff,
vs.
CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Defendant. [Two appeals.]
Supreme Court of Wisconsin.
March 5, 1954.
April 6, 1954.
*468 For the plaintiff there was a brief by E. M. Swingen of Madison, and John E. Krueger of Milwaukee, and oral argument by Mr. Krueger.
For the defendant there were briefs by Bender, Trump, McIntyre, Trimborn & Godfrey of Milwaukee, and Aberg, Bell, Blake & Conrad of Madison, attorneys, and Rodger S. Trump of counsel, and oral argument by Rodger S. Trump.
CURRIE, J.
As to defendant's appeal from the judgment, the sole question presented is whether there is credible evidence to sustain the findings of the jury that defendant was negligent in regard to furnishing the employees of the Middleton Lumber Company, including plaintiff, with a boxcar reasonably free from discoverable defects; and that such negligence was a proximate cause of the accident.
No question is raised as to the wording of the special verdict. It is conceded by the defendant Railroad Company that even though the boxcar in question had been received by it from a connecting carrier, nevertheless, it was defendant's duty, as the delivering carrier, to deliver to the consignee a car reasonably free from discoverable defects. On this point see 44 Am. Jur., Railroads, pp. 654-656, secs. 433, 434.
On August 9, 1950, a steel boxcar load of lumber arrived by freight train at Middleton, Wisconsin, from Marquette, Iowa, over defendant's railroad (hereinafter referred to as the "Milwaukee Road"). The freight-train crew switched *469 the car to a sidetrack opposite the lumberyard of the Middleton Lumber Company, consignee of the car, it being so spotted there about 3:35 p. m. of the same day. This shipment of lumber had originated from Corning, California, the car itself being owned by the Baltimore & Ohio Railroad Company. It had been turned over to the Milwaukee Road at Council Bluffs, Iowa, on August 6, 1950, by a connecting carrier.
While the car was in the possession of the Milwaukee Road it was inspected at several points by Milwaukee Road car inspectors, but no defects were noted on the inspection records. After breaking the seal on the car, Charles and James Utter, two young men who were twin brothers and officers of the consignee lumber company, attempted to open the car door by pushing it sideways from left to right but were only able to open it approximately one and one-half feet when it stuck. The plaintiff, also an employee of the consignee, then arrived on the scene and he lent his efforts to those of the Utter brothers, but their combined exertions proved unsuccessful in attempting to open the door farther. Plaintiff then went over to the near-by depot at Middleton and reported to defendant's agent in charge the difficulty experienced in attempting to open the door. Such agent thereupon instructed his assistant, one France, to go to the car and assist in opening it.
When France arrived there the Utter brothers were in the car, and France noticed that one of the "hinges" or "hooks" at the upper left-hand corner of the door "was partially off" and that "one end was kind of hanging down a little bit." Such "hinge" or "hook" apparently was the mechanism which held the upper left-hand corner of the door on the metal rail or guide at the top of the door opening on the car proper, and upon which rail the door slid when being opened or shut.
*470 According to one Allen, a Milwaukee Road car inspector, the weight of the car door was carried by two rollers (wheels) traveling upon a rail situated below the car-door opening rather than by the rail at the top of the opening. One of these rollers was attached at the bottom left-hand corner of the door and the other at the bottom right-hand corner. Charles Utter testified that this particular car was different than most boxcars in that there was nothing to hold the bottom of the door in place on the rail on which such rollers traveled and that the door stayed in position on the rail only when it was locked, "otherwise the bottom of the door could swing out." After looking the situation over, France suggested that he and Bachmann pull the door out at the bottom away from the car and then lift up on it so that one of the Utter brothers inside the car could place the displaced "hinge" or "hook" back in position on the guide rail. He and Bachmann attempted to do this once without success. Then France and Bachmann made another attempt at pulling the door outward and lifting up on it at the same time, and while doing so the door slipped off the top guide rail and fell on Bachmann, injuring him, France managing to safely get out of the way. At the time of the accident France had hold of the bottom of the door closest to the one and one-half foot opening, while Bachmann had hold of the handle at the bottom of the center of the door.
The day following the accident, one Stern, a representative of the workmen's compensation insurance carrier of the consignee lumber company, made an investigation of the accident and examined the car door, which was then standing alongside the car, and also the car itself. He testified that he found both the top and bottom rails of the door badly dented with a pronounced flattening of the top rail, and thought them in "very poor condition." Defendant's car inspector, Allen, testified that these rails were on the inside of the door and *471 therefore not visible when the door was closed. However, Stern also observed the rail at the bottom of the car-door opening, upon which the two rollers of the door operated, and stated that such rail appeared to be in the same dented and poor condition as the two rails affixed at the top and bottom of the door itself. He further stated that from his long experience in investigating auto accidents he could tell that the dents were not of recent origin because such dents were rusted over. When asked if such defects could have been observed when the door was hung in place onto the boxcar, he stated that it was his "guess" that they could be, but that he did not positively know this as he was not an expert as to car doors.
Defendant's expert witness, Allen, testified that when the door of such a boxcar is closed one can see the bottom part of the rollers where they roll on the track, thus indicating that such track or rail is visible by one making an exterior inspection. Thus Stern's "guess" was confirmed by defendant's own expert witness. Allen further testified that when cars are inspected by him as a car inspector he looks to see if "the tracks are not bent, so the door will be operated when it gets to its destination." The jury had the right to infer that such reference to "tracks" meant the bottom rail on which the rollers of the door operate. He further stated that a door, such as the door in this instance, which would swing free at the bottom in the manner in which Charles Utter testified, "would be defective."
It is our conclusion that there was sufficient credible evidence in the record to sustain the jury's finding that the defendant Railroad Company was negligent in regard to furnishing a boxcar which was not reasonably free from discoverable defects. The facts in the instant case are readily distinguishable from those in the cases of Ambrose v. Western Maryland R. Co. (1951), 368 Pa. 1, 81 Atl. (2d) 895, *472 and Martin v. Southern Pac. Co. (1942), 46 Fed. Supp. 954, relied upon by the defendant.
In Ambrose v. Western Maryland R. Co., supra, the boxcar door was from one-eighth to one-fourth inches shorter in height than required to hold it in place between the bottom and top rails, so that when opened the door fell outward, fatally injuring plaintiff's intestate. This defect which caused the fatal injury was not discoverable by an inspection made from the ground, but could only have been discovered from the top of a ladder. In its opinion the Pennsylvania court stated (p. 10), "there was no defect that was ascertainable by a reasonable inspection."
The United States district court in Martin v. Southern Pac. Co., supra, held that the doctrine of res ipsa loquitur was not available to the plaintiff, who was injured as the result of a boxcar door falling upon him, inasmuch as employees of the consignee were in charge of the car at the time that the injury occurred and had resorted to the use of force in attempting to open the door. Such force first consisted of the use of a two-by-four as a lever, and, when that proved unsuccessful, a motorized lumber carrier was moved in position so as to push against the door. After the accident the top guide rail of the door was sprung, but there was no evidence that such condition existed prior to the application of force to open the door. Plaintiff also claimed other defects were present but the evidence showed that such defects could only have been discovered by an inspection made from the inside of the car and not from the outside. Therefore, there was an entire absence of proof that there was any reasonable discoverable defect prior to the accident.
As to the question of causation, it is defendant's contention that the pulling out and lifting up of the door by France and plaintiff was the cause of the accident rather than any defect in the car itself, and that in any event the jury's answer to *473 the causation question was based necessarily on speculation and cannot stand. In support of such contention the case of Kleimenhagen v. Chicago, M. & St. P. R. Co. (1886), 65 Wis. 66, 26 N. W. 264, was cited by defendant.
In the Kleimenhagen Case the plaintiff was injured as a result of the door becoming detached and falling upon him while attempting to enter a railroad freight car loaded with livestock. The door was at the end of the car (not the side) and opened and closed by sliding sideways. Plaintiff attempted to open the door by pushing it with his hand to slide it sideways, but succeeded in opening it only about six inches, when it stuck. He then got down, placed his feet upon the drawbar at the end of the car below the door, took hold of the door with both hands, and gave a strong jerk with the whole weight of his body. The door had been held in place by metal slides at the top and bottom but by such application of force the door was pulled loose from the guides and fell upon plaintiff. After the accident, employees of the defendant railroad replaced the door, using a steel bar to spring it back into position on the slides. When thus replaced, the door moved freely on the slides and no repairs were made upon it, nor were any necessary. There was no evidence of any defect in the door, or the car. Therefore, in so far as the evidence disclosed, the only cause of the door falling upon plaintiff was the force which he had exerted in pulling the door outwardly toward him, which was a direction in which the door was not intended to open.
The only similarity between the facts in the Kleimenhagen Case and those in the instant case is that the plaintiff Bachmann and France did pull the door outward at the bottom in order to lift it up in an attempt to get the upper left-hand corner "hinge" or "hook" back onto the upper rail. In the instant case, unlike in the Kleimenhagen Case, there was a reasonably discoverable defect which undoubtedly caused the *474 car door to become stuck when the consignee's employees attempted to open it. It was as the direct result of such defect that France and the plaintiff resorted to the method that they did in attempting to get the car door back in place preparatory to opening it. Such act on their part was but one of the links in the chain of causation stemming from the existing defect in the door. It did not constitute such an intervening cause as would relieve defendant from liability. Restatement, 2 Torts, p. 1196, sec. 447; McFee v. Harker (1952), 261 Wis. 213, 52 N. W. (2d) 381. There is, therefore, no sound basis to support defendant's contention that there was no credible evidence in the case upon which the jury could find that defendant's negligence was the proximate cause of plaintiff's injury.
It is significant that defendant raises no question as to the answer of the jury to the question of the special verdict inquiring as to the contributory negligence of the plaintiff, by which answer the jury absolved plaintiff from any contributory negligence. Undoubtedly, in so finding, the jury gave great weight to the fact that the plaintiff in assisting France in pulling out the door at the bottom and attempting to lift it upward was acting pursuant to the express suggestion of France, who had been instructed by defendant's agent in charge at Middleton to assist the employees of the consignee in opening the car door.
As previously mentioned, plaintiff has appealed from the order of the circuit court extending the time within which the defendant might serve its proposed bill of exceptions. The order in question specifically found that "good cause exists" for granting the extension of time. Plaintiff's attorneys, however, maintain that such order constituted an abuse of discretion under the provisions of sec. 269.45 (1), Stats., and assert that defendant should have ordered such transcript earlier.
*475 Notice of entry of judgment was served upon defendant's attorneys on April 17, 1953. According to the affidavit of the court reporter, the defendant ordered the transcript under date of May 18, 1953, approximately one month after the service of the notice of entry of judgment. The notice of appeal to this court was not served until August 18, 1953. Surely an aggrieved party should be accorded some reasonable time after the service of the notice of entry of judgment within which to decide whether or not to appeal from the judgment. We, therefore, can perceive no reasonable basis for plaintiff's contention that there was any abuse of discretion on the part of the circuit court in finding that good cause existed for granting the extension of time in which to serve the proposed bill of exceptions.
By the Court.The judgment and order appealed from are affirmed.