Huck, Plaintiff, v. Chicago, St. Paul, Minneapolis & Omaha Railway Company, Defendant: Doughboy Industries, Inc., Interpleaded Defendant and Respondent: Minneapolis, St. Paul & Sault Ste. Marie Railway Company, Interpleaded Defendant and Appellant.

*September 11—October 7, 1958.*

For the appellant there were briefs by *Reginald W. Nelson* of Milwaukee, attorney, and *Edward M. Glennon* of Minneapolis, Minnesota, of counsel, and oral argument by *Mr. Nelson*.

For the respondent there were briefs by *Stafford, Pfiffner & Stafford* of Chippewa Falls, and oral argument by *Robert F. Pfiffner*.

FAIRCHILD, J. The Soo Line argues that it is entitled to summary judgment dismissing the cross complaint because the undisputed facts show that it cannot be liable to plaintiff, so as to be liable to the Omaha for contribution if the Omaha be liable to plaintiff, and because on no theory could the Soo Line be liable to indemnify the Omaha. The Omaha has not asserted that the Soo Line is or may be liable to it, but has asserted a right to be indemnified by Doughboy for any amount the Omaha must pay plaintiff. Doughboy is asserting the possible liability on the part of the Soo Line to the Omaha and claims that if Doughboy indemnifies the Omaha, Doughboy will be subrogated to the Omaha's rights against the Soo Line.

We assume for the purposes of this opinion that the hand brake on the car in question (as alleged) was not an efficient hand brake at the time of plaintiff's injury and had not been an efficient hand brake while the car was being hauled by the Soo Line.

(1) *Safety Appliance Act.* The Soo Line's first contention is that it cannot be liable to plaintiff under the Federal Safety Appliance Act. We agree.

Use of a car without an efficient hand brake was, at all times while the car was being used on the Soo Line, a

violation of 45 USCA, sec. 11, reading in part: "It shall be unlawful for any common carrier . . . to haul, or permit to be hauled or used on its line, any car . . . not equipped with . . . efficient hand brakes." Nevertheless, when the car began to be hauled or used on the line of the Omaha, the Soo Line's violation ceased.

The violation by the Soo Line, having terminated prior to plaintiff's injury, did not give rise to any liability to the plaintiff even if his injury were caused by the same defect which had put the Soo Line in violation of the statute. *Patton v. Baltimore & Ohio R. Co.* (3d Cir. 1952), 197 Fed. (2d) 732.

Doughboy suggests that the fact that the Soo Line engaged the Omaha to place the car on the track adjacent to Doughboy's plant and that the Soo Line rather than the Omaha had the duty, under the bill of lading and as delivering carrier, to deliver the freight, made the track on which the car in question was being used at the time of plaintiff's injury the Soo Line's track as well as the Omaha's. We fail to see, however, how the Omaha's agreement to haul this car over its own tracks gave the Soo Line any control over, or right to use the Omaha's track, so as to make it in any sense the "line" of the Soo Line.

Hence any theory of liability of the Soo Line to plaintiff must be predicated upon common-law negligence and not upon the absolute liability arising from violation of the Safety Appliance Act.

(2) *Common Law Negligence.* Here we assume for the purpose of this opinion that, as alleged, the Soo Line failed to exercise ordinary care in inspecting and testing the hand brake on this car while in its possession and that it would have discovered the ineffective condition of the brake if it had used ordinary care. The Soo Line takes the position that even if that be true, it would not be liable to plaintiff because it was an intermediate carrier and, as such, owed no

duty to an employee of the consignee. Doughboy, on the other hand, argues that the Soo Line was the delivering carrier and as such did have a duty to employees of the consignee to use ordinary care in determining whether the car was in safe condition and in either repairing the defect or warning of its existence. The argument thus revolves around the relationship of the Soo Line to the particular shipment.

The parties appear to agree on fundamental rule of law involved.

"The delivering carrier also owes to the consignee and to his employees engaged in unloading a railroad car which the delivering carrier has received from a connecting carrier the duty of making reasonable inspection of such car to determine whether it is safe for unloading, and to give the consignee notice or warning of defective conditions in the car which are discoverable by such inspection. . . . But it is no part of the duty of an intermediate carrier to examine a car to see whether it is in a safe condition for anyone to enter for the purpose of unloading it when it reaches its destination." 44 Am. Jur., Railroads, pp. 655, 656, sec. 434, cited in *Bachmann v. Chicago, M., St. P. & P. R. Co.* (1954), 266 Wis. 466, 468, 63 N. W. (2d) 824; *Sykes v. St. Louis & S. F. R. Co.* (1903), 178 Mo. 693, 77 S. W. 723.

For the purpose of determining liability for damage to the shipment of property, it is clear that the Soo Line would be considered the delivering carrier. The Carmack amendment to the Interstate Commerce Act, 49 USCA, sec. 20 (11), provides in part that, "Any common carrier . . . delivering said property . . . shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, . . . for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, . . . and provided further, that for the purposes of this paragraph and of paragraph (12) of this section the delivering carrier shall be construed to be the carrier per-

forming the line-haul service nearest to the point of destination and not a carrier performing merely a switching service at the point of destination."

The Soo Line was also named in the bill of lading as the last carrier. In a situation where the joint through rate covered delivery at the warehouse of the consignee, and a carrier which performed switching services to place the car at the warehouse received no part of the joint through rate but was employed by the connecting carrier named last in the bill of lading to perform the switching service in order to effect delivery, the connecting carrier named last in the bill of lading was held to be the delivering carrier for the purpose of an action to recover for loss of a portion of the shipment. *Missouri Pacific R. Co. v. Reynolds-Davis Grocery Co.* (1925), 268 U. S. 366, 45 Sup. Ct. 516, 69 L. Ed. 1000.

The Soo Line apparently concedes that it would be the delivering carrier as the term is used in the Carmack amendment but contends that in the instant action for personal injury this is immaterial because it did not make the actual delivery to Doughboy.

We conclude that facts sufficient to determine the duty of the Soo Line with respect to delivery are not before us on this motion for summary judgment. Under the applicable law, the applicable tariff, and the bill of lading, together with any other facts which might legally affect the obligations of the Soo Line as a carrier of this shipment, was it bound to turn the car over to the Omaha as it did? Or did the Soo Line have an obligation with respect to delivery to Doughboy which it was legally free to perform in one of two or more ways so that its employment of the Omaha to perform the switching service was merely a means of discharging the obligation of the Soo Line? We note that this type of situation is dealt with in the comments to sec. 392, p. 1065, Restatement, 2 Torts. The material question under the rule stated in that section would seem to be whether the unloading

operations at Doughboy were for the "business purposes" of the Soo Line. As suggested above, we are of the opinion that the trial court correctly determined that the facts shown on the motion for summary judgment did not compel the conclusion that the Soo Line was not the delivering carrier.

*By the Court.*—Order affirmed.

MARTIN, C. J., took no part.