CHICAGO AND NORTH WESTERN
RAILWAY COMPANY, Plaintiff,

v.

CHICAGO, ROCK ISLAND & PACIFIC
RAILROAD COMPANY, Defendant.

Civ. No. 793.

United States District Court
N. D. Iowa,
Central Division.

Dec. 7, 1959.

Frank W. Davis, Ray H. Johnson, Jr., Davis, Huebner, Johnson, Herring & Burt, Des Moines, Iowa, Dwight G. Rider, Rider, Bastian & Beisser, Fort Dodge, Iowa, for plaintiff.

A. B. Howland, Des Moines, Iowa, John H. Mitchell, Mitchell, Mitchell & Murray, Fort Dodge, Iowa, for defendant.

GRAVEN, District Judge.

In this action the plaintiff, Chicago and North Western Railway Company, having paid $70,000 to one Kleppe, one of its brakemen, in settlement of his claim for injuries against it, asks indemnity or, in the alternative, contribution from the defendant, Chicago, Rock Island & Pacific Railroad Company. The injuries for which settlement was made were received in connection with the operation of a hand brake on a car owned by the defendant which at the time was on a transfer track at Goldfield, Iowa, used by the plaintiff and the defendant for the exchange of cars. Both parties are common carriers engaged in interstate commerce. Jurisdiction is based upon diversity of citizenship. The case was tried to the Court.

Goldfield, Iowa, was not a division point on either line, and neither the plaintiff nor the defendant maintained car inspectors there. At Goldfield the plaintiff's line ran, in general, north and south, and the defendant's line ran, in general, east and west. The lines of the plaintiff and the defendant intersected at substantially right angles. A curved transfer or interchange track connected the two lines. That track was west of the plaintiff's line and south of the defendant's line. The track was approximately 775 feet in length. The defendant was the owner of the upper, or northerly, 390 feet of the track, and the plaintiff was the owner of the balance.

At about 9:00 a. m. on February 5, 1955, a train crew of the defendant placed on the exchange track five cars which were destined for points on the plaintiff's line. The defendant maintained a station agent at Goldfield but, since February 5, 1955, was a Saturday, the agent was not on duty. The defendant's crew left the waybills for the cars in a box at the defendant's station. At 11:44 a. m. on February 5, 1955, a train of the plaintiff arrived at Goldfield from the south. The crew of that train had been instructed to pick up the five cars. Kleppe was a brakeman on that train. The other brakeman on the train, one Reynolds, secured the waybills for the cars from the box at the defendant's station. The engine on the plaintiff's train then proceeded onto the transfer track from the south for the purpose of placing the five cars on the plaintiff's train. Reynolds and Kleppe were the brakemen in connection with that operation. They first released the air in the train lines of the five cars. On four of the cars, including the most northerly car, the hand brakes had been set. The most northerly car was a box car owned by the defendant, designated as Rock Island 262261. It had been loaded with farm implements in Illinois and was destined for a point in South Dakota. Its hand brake was located at the north end thereof, immediately below the roof of the car. The brake was of the ratchet type, in which a section of chain could be wound in or out of a housing for the purpose of applying or releasing the brakes. The ratchet was operated by a handle which hung down from a pivot on the housing. A couple of feet below the brake housing was a small platform for use by the person applying or releasing the brakes. Kleppe ascended to the platform for the purpose of releasing the brakes. Prior thereto the engine had been coupled onto the southernmost of the cars, all of which were coupled together. The engine had remained standing after coupling onto the southernmost car. Kleppe then attempted to release the brakes but was unable to do so. He then thought that if the car were placed in motion he could release the brakes. He signalled Reynolds, who was then by the engine, to move the cars. The engine proceeded to move the cars. As the cars began to move Kleppe pulled and continued to pull on the brake handle. After the cars had been moved fifteen to twenty feet the brake handle and part of the housing suddenly came loose, and Kleppe was precipitated to the ground

and sustained injuries which were serious and permanent in nature. After the mishap it was discovered that parts of the brake mechanism were missing. A search for the missing parts was unavailing. There was no ice or snow on the platform.

Following the mishap the plaintiff's crew pulled all five cars onto the plaintiff's main line and then switched the car involved in the mishap back to the transfer track. The conductor of the plaintiff's train then placed the waybill for the car in the box at the defendant's station with a notation on it that it was a bad order car. Neither the defendant's station agent nor any of its other employees knew, until sometime afterwards, of the movement of the car by the plaintiff's crew immediately preceding the mishap. When the defendant's station agent at Goldfield came on duty on Monday morning, February 7, 1955, he found the waybill in the box. On the same day the car was hauled by the defendant to Iowa Falls, Iowa, where it was repaired.

Kleppe subsequently made known to the plaintiff that he was making claim against it for his injuries. The plaintiff tendered to the defendant the defense of Kleppe's claim. The tender was rejected and the defendant refused to participate in any settlement of Kleppe's claim. Kleppe handled his claim without the assistance of legal counsel. He negotiated a settlement for $70,000. On October 13, 1956, the plaintiff paid Kleppe that amount. The reasonableness of the settlement is not controverted by the defendant. The claim of Kleppe against the plaintiff was concededly based upon the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

In the present case the plaintiff makes claim for indemnity. In that connection it asks judgment against the defendant for the entire amount paid in settlement of the Kleppe claim. In the alternative, the plaintiff makes claim for contribution. In that connection it asks judgment against the defendant for one-half of the amount paid in settlement of the Kleppe claim.

It is the claim of the defendant that the question as to whether the plaintiff is or is not entitled to either indemnity or contribution is not reached in this case. The contention of the defendant in this regard has two phases. It contends, first, that the claim of the plaintiff is barred by the statute of limitations. In that connection the defendant urges that the plaintiff's claim is barred by 45 U.S.C.A. § 56, relating to actions brought under the Federal Employers' Liability Act. That section provides, in part, as follows:

"No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."

In the instant case the injuries which gave rise to the claim against the plaintiff were sustained on February 5, 1955. The $70,000 in settlement was paid by the plaintiff to Kleppe on October 13, 1956. This action was commenced on May 18, 1958, more than three years after the injuries were sustained but less than three years after the payment was made to Kleppe in settlement of his injuries. There inheres in this contention of the defendant two theories: one, that the applicable statute of limitations is the one contained in the Federal Employers' Liability Act and, second, that a claim for indemnity or contribution accrues when injuries are sustained by the injured party.

██ It is well settled that the law of the place of the commission of the tort which gives rise to a claim for indemnity or contribution is the applicable law. Northwest Airlines, Inc. v. Glenn L. Martin Company, D.C.1958, 161 F. Supp. 452, and authorities cited. See Wade, Joint Tortfeasors And The Conflict of Laws, 6 Vanderbilt Law Review 464, 473 (1953). It seems clear that, even though liability for the tort committed was bottomed on and existed because of the Federal Employers' Liability Act, the right to indemnity or contribution is nevertheless governed by the applicable state law. Ft. Worth & Denver Railway Company v. Threadgill, 5 Cir.,

1955, 228 F.2d 307, 312. See also Zontelli Brothers v. Northern Pacific Railway Co., 8 Cir., 1959, 263 F.2d 194, and Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 1953, 201 F.2d 408, 37 A.L.R.2d 1399.

■ It appears to be well settled, as to a claim for indemnity or contribution, that the statute of limitations does not begin to run until the person seeking indemnity or contribution has paid the judgment rendered in favor of the injured person or has settled the claim. See Annotation, 20 A.L.R.2d 925. See also Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa Law Review 517, 538 (1952). In the recent case of Hawkeye-Security Insurance Company, Inc. v. Lowe Construction Co., Iowa, 1959, 99 N.W.2d 421, the Court declared that ordinarily the right to contribution becomes complete and enforceable only upon payment by the claimant which discharges more than his just share of the common obligation. A claim such as here involved is regarded as inchoate from the time of the creation of the relationship until one of the events referred to occurs. Zontelli Brothers v. Northern Pacific Railway Co., 8 Cir., 1959, 263 F.2d 194, 200.

■■ It seems clear that as to the claim of the plaintiff herein the applicable statute of limitations is that of the State of Iowa and not the statute of limitations contained in the Federal Employers' Liability Act relied on by the defendant. It also seems clear that the plaintiff's claim for indemnity or contribution accrued on October 13, 1956, when it paid Kleppe $70,000 in settlement of his claim. The general provisions relating to the limitation of actions in Iowa are contained in Section 614.1, Code of Iowa 1958, I.C.A. The defendant has not pointed out any provision of that section which would bar the asserted claim of the plaintiff. In this connection see Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, supra at 538, footnote 133. It is the holding of the Court that the claim of the plaintiff for indemnity or contribution is not barred by any applicable statute of limitations.

It was heretofore noted that it was the contention of the defendant that the question of whether the plaintiff was entitled to indemnity or contribution was not reached, and that such contention had two phases. The first phase was the statute of limitations. The other phase was that the plaintiff had by contract agreed not to make claim against the defendant arising out of injuries sustained in connection with cars owned by the latter.

■ It is undisputed that the plaintiff and the defendant were both parties to the rules of the Association of American Railroads and that both had agreed to be bound by those rules. The defendant relies upon certain of those rules. Rule 7 of the Association of American Railroads' Code of Car Service Rules provides as follows:

"Cars shall be considered as having been delivered to a connecting railroad when placed upon the track agreed upon and designated as the interchange track for such deliveries, accompanied or preceded by necessary data for forwarding and to insure delivery, and accepted by the car inspector of the receiving road. Unless otherwise arranged between the roads concerned the receiving road shall be responsible for the cars, contents and per diem after receipt of the necessary data for forwarding and to insure delivery, and until they have been accepted by its inspector or returned to the delivering road."

The Code of Rules of the Association of American Railroads also contains the following rules:

*"Care of Foreign Freight Cars*

"Rule 1. (a) Each railroad is responsible for the condition of all cars on its line, and must give to all equal care as to inspection and lubrication.

"(b) Repairs should be made by car owner insofar as may be practicable. In the event a foreign car

requires repairs account of owner's defects, such repairs may be made subject to the following conditions:

"1. Repairs to loaded cars must be confined to the minimum necessary for the safety of car, lading and trainmen.

"2. Repairs to empty cars located at points where there is a direct connection with car owner, or where there is an intermediate switching line to car owner and cars are acceptable to such switching line for movement to car owner, must be confined to the minimum necessary for safety of trainmen and safe movement of car to home line; except where car is subsequently loaded on repairing line or on any line in same switching district in which the repairs were made, in which event paragraph (b–1) applies.

"3. Repairs to empty cars at other points must be confined to the minimum necessary for safety of car and trainmen; except where car is subsequently loaded on repairing line or on any line in same switching district in which the repairs were made, in which event paragraph (b–1) applies.

"4. Empty cars of lower loading classification may not be repaired for Class A loading without car owner's consent.

"*Interchanging Freight Cars*

"Rule 2. Cars having defects for which delivering company is responsible must be properly carded when offered in interchange.

"Empty cars offered in interchange must be accepted, providing they conform to the requirements of Rule 3 and are in safe condition for movement, the receiving road to be the judge."

It is the contention of the defendant that the plaintiff had accepted the car in question. It is the further contention of the defendant that under the above rules it was, by reason of the plaintiff's having accepted the car, relieved of any responsibility for personal injuries sustained by the plaintiff's employees in connection with the car. There inheres in this contention of the defendant the theory that under the rules referred to the plaintiff in effect waived any right it might have against the defendant by way of indemnity or contribution arising out of the Kleppe mishap.

The defendant presented the testimony of witnesses who were familiar with the practice and custom of railroads. It was the testimony of those witnesses that it was not the custom and practice of railroads which were parties to the rules to make claims against each other such as here asserted by the plaintiff. It is the claim of the defendant that this testimony showed the practical construction placed upon the rules by the railroads which were parties to them. It was conceded by the defendant that at one time the Committee of the Car Service Division of the Association of American Railroads ruled that the rules in question had no application to the matter of liability for personal injuries. The defendant disagrees with that interpretation. In the case of Chicago, Rock Island & Pacific Railroad Co. v. Williams, 8 Cir., 1957, 245 F.2d 397, certiorari denied 1957, 355 U.S. 855, 78 S.Ct. 83, 2 L.Ed.2d 63, a case involving personal injuries to an employee of a shipper, the present defendant relied upon what are concededly the same rules in connection with the question of indemnity. The same question, however, was not involved in that case as in the present case. The United States Court of Appeals for the Eighth Circuit observed (245 F.2d at page 405):

"* * * The only agreements between the parties were, as to traffic matters such as agreements relating to interchange, per diem, etc. No reference whatsoever is made in such agreements as to indemnity of any kind, * * *."

It is the holding of the Court that the rules relied upon by the defendant do not operate as a waiver of or a bar to any claim for indemnity or contribution that

the plaintiff might have against the defendant arising out of the mishap. It is the view of the Court that the most that appears from the evidence is that many railroads heretofore had observed the protocol of not making claims against other railroads of the nature here involved.

■ The plaintiff not being barred by any statute of limitations or by the rules referred to from asserting a claim for indemnity or contribution against the defendant, some phases of that claim will next be considered. A claim for indemnity involves a shifting of the entire loss, and a claim for contribution involves a sharing of the loss. In connection with the subject of indemnity or contribution as related to negligent tortfeasors, the term "joint tortfeasors" is generally used. In the strict sense of the term, "joint tortfeasors" would have reference to situations in which the parties act in concert in committing a tort. That situation is only infrequently encountered. In the overwhelming number of situations the parties are in reality concurrent tortfeasors. However, since the term "joint tortfeasors" as generally used in the decisions encompasses concurrent tortfeasors, it will be so used herein. Where both tortfeasors are acting independently, the situation is sometimes referred to as a case of persons whose tort liability arises out of the same circumstances. See De Lude v. Rimek, 1953, 351 Ill.App. 466, 115 N.E.2d 561, 563, and Restatement of Torts, § 885, p. 460.

A subsantial part of the briefs and arguments of the parties was devoted to a discussion of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, and the Federal Safety Appliance Acts, 45 U.S. C.A. § 1 et seq. The latter will hereinafter be referred to as the Federal Safety Appliance Act.

Congress enacted the original Safety Appliance Act in 1893. It now appears as Sections 1–16, 45 U.S.C.A. Sections 1 through 6 were adopted by the Act of March 2, 1893, c. 196, 27 Stat. 531, Sections 8 through 10 were adopted by the Act of March 2, 1903, c. 976, 32 Stat. 943, and Sections 11 through 16 were adopted by the Act of April 14, 1910, c. 160, 36 Stat. 298. Since its original enactment it has contained provisions relating to appliances for rolling stock used in interstate commerce and has provided for a penalty for each violation of the Act. Defects which constitute violations of the Act are known as penalty defects. The present Employers' Liability Act was originally enacted in 1908. The pertinent portion of the present Act (45 U.S.C.A. § 51) is as follows:

"Every common carrier by railroad while engaging in commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * resulting in whole or in part from the negligence of * * * such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances * * * or other equipment."

■ An action by an employee against his employer under the Federal Employers' Liability Act where the Safety Appliance Act is not involved is predicated on negligence. Zumwalt v. Gardner, 8 Cir., 1947, 160 F.2d 298, 303; McGivern v. Northern Pac. Ry. Co., 8 Cir., 1942, 132 F.2d 213, 216.

■ In terms, at least, the Safety Appliance Act merely imposes a small statutory penalty for a violation thereof, to be recovered in an action by the Government, and does not confer any right of action in favor of one who sustains injury as a result of the violation. Jacobson v. New York, N. H. & H. R. Co., 1 Cir., 1953, 206 F.2d 153, 155. However, it has long been settled that the Federal Safety Appliance Act and the Employers' Liability Act are *in pari materia*. San Antonio & Aransas Pass Ry. Co. v. Wagner, 1916, 241 U.S. 476, 484, 36 S.Ct. 626, 60 L.Ed. 1110. A railroad employee who sustains injuries because of a violation by his employer of the Safety Appliance Act may recover for such injuries from the latter under the Federal Employers' Liability Act with-

out other proof of fault, except such violation. Carter v. Atlanta & St. A. B. Ry. Co., 1949, 338 U.S. 430, 434, 70 S.Ct. 226, 94 L.Ed. 236; Byler v. Wabash R. Co., 8 Cir., 1952, 196 F.2d 9, 11. Once a violation of the Safety Appliance Act is established, only causal relation is in issue. Carter v. Atlanta & St. A. B. Ry. Co., supra; Campbell v. Pittsburgh & W. Va. R. Co., D.C.Pa.1954, 122 F. Supp. 749, 751; Hallada v. Great Northern Ry., 1955, 244 Minn. 81, 69 N.W.2d 673. Sections 53 and 54, 45 U.S.C.A., abolish the defenses of contributory negligence and assumption of risk, respectively. See Byler v. Wabash R. Co., supra.

 In actions under the Federal Employers' Liability Act where the Safety Appliance Act is not involved, the employer is not an insurer of the safety of the place of work or of instrumentalities or tools, but he must use reasonable care to see that the employee is furnished a safe place to work and safe instrumentalities and tools. Bailey v. Central Vt. Ry., 1943, 319 U.S. 350, 352–353, 63 S.Ct. 1062, 87 L.Ed. 1444; Williams v. Atlantic C. L. R. Co., 5 Cir., 1951, 190 F.2d 744, 748–749; Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 1948, 165 F. 2d 135, 138. Liability for failure of the employer to furnish a safe place to work is based upon that portion of the Federal Employers' Liability Act (45 U.S.C.A. § 51) which makes employers liable for injuries to employees caused ''by reason of any defect or insufficiency, due to its negligence, in its cars, engines, * * * or other equipment.'' Chicago Great Western Railway Company v. Smith, 8 Cir., 1955, 228 F.2d 180, 184.

The Safety Appliance Act, in 45 U.S.C.A. § 11, makes it unlawful for any common carrier engaged in commerce ''to haul, or permit to be hauled or used in its line'' any car not equipped with ''efficient hand brakes.'' Each party charges the other with a violation of that section. It is the claim of both parties that the matter of the violation of that section and responsibility therefor is of determinative importance on the questions of indemnity and contribution.

The parties are in controversy as to what claimed violations of duty were involved in connection with the Kleppe settlement. The defendant asserts that the plaintiff made settlement with Kleppe because of the violation by the plaintiff of the provision of the Safety Appliance Act relating to brakes. The plaintiff asserts that it made settlement with Kleppe because of its failure to furnish him with a safe place to work under Section 51, 45 U.S.C.A., of the Federal Employers' Liability Act. Since no action was instituted by Kleppe, there were no pleadings to refer to for the specifications of violation of duty or duties asserted by him, as there were in some cases where a claim for indemnity was involved. See Chicago Great Western Ry. Co. v. Farmers Produce Co., D.C.N.D.Iowa 1958, 164 F.Supp. 532. While the claim of Kleppe was concededly based upon the Federal Employers' Liability Act, it is not possible to ascertain from the record in this case what claimed violation of duty or duties on the part of the plaintiff was involved in the Kleppe claim. The fact that the plaintiff is making claim for indemnity or contribution presupposes that it did violate some duty or duties that it owed to Kleppe. If such were not the situation, the plaintiff in making the payment would have been acting as a mere volunteer.

The parties discussed the Federal Safety Appliance Act at some length. Certain phases of that Act will be next considered.

 Neither the Safety Appliance Act nor the common law requires a carrier to accept from a connecting line a car equipped in violation of the Safety Appliance Act. It is both the right and duty of a carrier to refuse to accept such defective car in interchange if acceptance would necessarily involve its own use of such car in violation of the Act. Baltimore & O. S. W. R. Co. v. United States, 6 Cir., 1917, 242 F. 420, 425. A re-

ceiving carrier has a duty to inspect and ascertain before accepting cars tendered for shipment on its lines or handling them in any way, except perhaps to make necessary repairs, that they are equipped in every way and comply in every respect with the requirements of the Safety Appliance Act. Brady v. Wabash Ry. Co., 1932, 329 Mo. 1123, 49 S.W.2d 24, 27, 83 A.L.R. 655; Baltimore & O. S. W. R. Co. v. United States, supra. However, the statutory liability arises irrespective of any duty of inspection and regardless of a complete lack of fault on the part of the railroad. Alabama Great Southern R. Co. v. United States, 5 Cir., 1956, 233 F.2d 520, 525. The duty imposed is an absolute one, and the carrier is not excused by any showing of care, however assiduous. Myers v. Reading Co., 1947, 331 U.S. 477, 482, 67 S.Ct. 1334, 91 L.Ed. 1615; Brady v. Terminal R. Ass'n, 1938, 303 U.S. 10, 15, 58 S.Ct. 426, 82 L.Ed. 614. See also Zumwalt v. Gardner, 8 Cir., 1947, 160 F.2d 298, and O'Donnell v. Elgin, J. & E. Ry. Co., 1949, 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187, 16 A.L.R.2d 646. The O'Donnell case was an action under the Federal Employers' Liability Act involving a broken coupler. The Court stated (at page 390 of 338 U.S., at page 204 of 70 S.Ct.:

"But this Court early swept all issues of negligence out of cases under the Safety Appliance Act. For reasons set forth at length in our books, the Court held that a failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability—a liability that cannot be escaped by proof of care or diligence."

■ If a carrier receives a car in defective condition from another carrier at an interchange track and hauls it over its line in that condition, it violates the law regardless of the distance hauled or the purpose of the hauling. United States v. Northern Pac. Ry. Co., 9 Cir., 1923, 293 F. 657, 660. In United States

v. Atchison, T. & S. F. Ry. Co., D.C. 1945, 61 F.Supp. 580, a defective car placed on an interchange track was so coupled between non-defective cars that they could not be moved or used without moving the defective car. The receiving carrier, after inspecting the cars and discovering the defective one, refused to accept it in that condition. Nevertheless, it removed the cars to its yards before redelivering the defective car by placing it back on the interchange track. In an action by the United States to recover the statutory penalty provided for a violation of the Safety Appliance Act, the trial court held that there was no violation of the Act. On appeal the judgment was reversed. United States v. Atchison, T. & S. F. Ry. Co., 9 Cir., 1946, 156 F.2d 457. The Court held that the handling of the car by the defendant did constitute a violation of the Act. The Court stated (at page 459): " * * * the courts should not be moved by considerations of convenience or practicability to whittle away * * * " the provisions of the Act.

■ Only two defenses are available under the statute: either a denial that the defective car was hauled, or a showing that the car became defective while in use by the carrier on its line and was being hauled from the place where the defect was first discovered to the nearest available point for repairs. 45 U.S.C.A. § 13; Alabama Great Southern R. Co. v. United States, 5 Cir., 1956, 233 F.2d 520, 525; United States v. Atchison, T. & S. F. Ry. Co., supra, 156 F.2d at page 458. Any other hauling of a defective car, including a hauling of it before its defective condition is discovered, is a violation of the statute though the carrier is without fault in not making the discovery. Chesapeake & O. Ry. Co. v. United States, 6 Cir., 1918, 249 F. 805, certiorari denied, 1918, 248 U.S. 580, 39 S.Ct. 67, 63 L.Ed. 431; Chesapeake & O. Ry. Co. v. United States, 4 Cir., 1915, 226 F. 683, 687. Although the necessary movement of a defective car for the purpose of repairs relieves the carrier from liability for the statu-

tory penalty,[1] it does not relieve the carrier from liability for injury to an employee caused thereby. 45 U.S.C.A. § 13. Of course, movement or hauling of a defective car is not necessary to constitute a violation of the Safety Appliance Act. Brady v. Terminal R. Ass'n, of St. Louis, 1938, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614; Minneapolis, St. P. & S. S. M. Ry. Co. v. Goneau, 1926, 269 U.S. 406, 46 S.Ct. 129, 70 L.Ed. 335. In a case where the contrary was contended, the Court in United States v. St. Louis Southwestern Ry. Co., 5 Cir., 1910, 184 F. 28, at page 32, stated:

> "The statute forbids hauling and using. Why were both words used? * * * 'Used' has other meanings than 'hauled.' It is a broader word. To haul is to use, but may not a car be used within the statutory meaning otherwise than by being hauled?"

In Cusson v. Canadian Pac. Ry. Co., 2 Cir., 1940, 115 F.2d 430, two cars belonging to other railroads stood coupled together on a side track. Defendant coupled its engine to car No. 1 to add it to a train. It was necessary to set the brake on car No. 2 so that it would not roll down the sloping track when the two cars were uncoupled. Car No. 2's brakes failed to hold it, and it began to roll after the cars were uncoupled. In obedience to instructions the plaintiff, defendant's employee, attempted to jump from car No. 1 to car No. 2 in order to stop it. In so doing he fell and sustained injuries for which he sued under the Safety Appliance and Federal Employers' Liability Acts. In holding that car No. 2 was in use by defendant, the Court stated (115 F.2d at page 432):

> "The fact that the Delaware car was not in motion does not of course mean that it was not in 'use' * *. Certainly the defendant 'used' the brake upon the Delaware car for its own purposes; that was necessary to prevent the Delaware car's 'drifting' down the track after the Boston

& Maine car had been uncoupled. The argument must therefore be that a 'use' of the brake was not a 'use' of the car, which is not only verbally untrue but which disregards the whole underlying purpose of the act."

Whether the defective car was hauled or used upon the portion of the transfer track owned by plaintiff or upon the portion owned by defendant is immaterial. Brady v. Wabash Ry. Co., 1932, 329 Mo. 1123, 49 S.W.2d 24, 28. " * * * on its line" relates to control, not ownership. In the present case the mishap occurred on the portion of the transfer track owned by the defendant. The plaintiff makes no claim that this feature is of significance. The fact that a railroad exercises control and direction over the crew and movements of cars constitutes a hauling on its line, under the Safety Appliance Act, even though the movement is over the tracks of another company. Philadelphia & R. Ry. Co. v. United States, 3 Cir., 1911, 191 F. 1; Rodgers v. Conemaugh & B. L. R. Co., D.C.1956, 137 F.Supp. 467; United States v. New York Cent. R. Co., D.C. 1946, 70 F.Supp. 761.

Efficient hand brakes are those which act or have the power to act effectually. Southern Pac. Co. v. Carson, 9 Cir., 1948, 169 F.2d 734, 737. Inefficient means not producing or not capable of producing the desired effect. Myers v. Reading Co., 1947, 331 U.S. 477, 483, 67 S.Ct. 1334, 91 L.Ed. 1615; Spotts v. Baltimore & O. R. Co., 7 Cir., 1938, 102 F.2d 160, 162.

There are two recognized methods of showing the inefficiency of safety appliances: either a particular defect may be shown to have existed, or a failure to function when operated with due care in the normal manner. Carter v. Atlanta & St. A. B. Ry. Co., 1949, 338 U.S. 430, 434, 70 S.Ct. 226, 94 L.Ed. 236; Myers v. Reading Co., 1947, 331 U.S. 477, 483, 67 S.Ct. 1334, 91 L.Ed. 1615; Byler v. Wabash R. Co., 8 Cir.,

---

**1.** See, however, United States v. Denver & R. G. W. R. Co., D.C.1959, 175 F.Supp. 662.

1952, 196 F.2d 9, 11; Missouri-K.-T. R. Co. of Tex. v. Ridgway, 8 Cir., 1951, 191 F.2d 363, 366–367, 29 A.L.R.2d 984; Spotts v. Baltimore & O. R. Co., 7 Cir., 1938, 102 F.2d 160, 162; Anderson v. Chesapeake & O. Ry. Co., 1933, 352 Ill. 561, 186 N.E. 185, certiorari denied, 1933, 290 U.S. 675, 54 S.Ct. 93, 78 L.Ed. 583; Didinger v. Pennsylvania R. Co., 6 Cir., 1930, 39 F.2d 798, 799. In the instant case the evidence discloses both the nature of the defect and the fact that the brake failed to function properly when operated in the usual manner.

In support of its contention that defendant violated the Safety Appliance Act, plaintiff relies upon Brady v. Wabash Ry. Co., 1932, 329 Mo. 1123, 49 S.W.2d 24, 83 A.L.R. 655, certiorari denied, 1932, 287 U.S. 619, 53 S.Ct. 20, 77 L.Ed. 538, and Brady v. Terminal R. Ass'n, 1938, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614. In the first case it appeared that the tracks of the Wabash and Terminal railroads were connected by an interchange track. Terminal placed a string of cars upon such track to await inspection, acceptance and further transportation by Wabash. Plaintiff, a Wabash inspector, was injured by reason of a defectively-attached grab iron while inspecting one of the cars to determine whether they would be accepted by Wabash. Prior to the inspector's injury, Wabash had not moved any of the cars or done anything else except to send its employee to inspect them. The Missouri Supreme Court reversed a judgment recovered by the inspector against Wabash for an alleged violation of the Safety Appliance Act, holding that it was not shown that the car was being hauled or used on its line at the time of his injury. The second case involved a subsequent action by the same inspector against Terminal for a violation of the Safety Appliance Act. Judgment for the inspector was reversed in Brady v. Terminal R. Ass'n of St. Louis, 1937, 340 Mo. 841, 102 S.W.2d 903, the Court holding that Terminal was not using or permitting the car to be used on its line at the time of the injury, and that Terminal

owed to the Wabash employee no common law duty to inspect. The Missouri Court, in turn, was reversed by the United States Supreme Court, 1938, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614, which held that the hauling or use of the defective car had not ended when plaintiff sustained his injuries, that Terminal's responsibility continued because Wabash had not accepted or assumed control of the car, and that Terminal was liable although the inspector was not its employee.

The Brady case would seem to be distinguishable from the present case. Prior to its inspector's injury, Wabash had not moved or otherwise handled any of the cars. At the time of Kleppe's injury, on the other hand, the plaintiff had coupled its locomotive to the cars for the purpose of removing them from the interchange track and placing them in its train; its brakemen had released the brakes on several of the cars; and the cars themselves were actually being moved by North Western's crew toward its train. It is the finding of the Court that the plaintiff had accepted the car in question.

The plaintiff claims that the defendant, by picking up the waybill for the car and taking the car to Iowa Falls, Iowa, for the purpose of having the brake repaired, recognized that the car had never been accepted or used by the plaintiff. However, it appears that at the time those acts were done neither the defendant's station agent at Goldfield nor any of the defendant's other employees knew of the handling and using of the car by the plaintiff.

Upon acceptance by the plaintiff of the car in question, the legal situation of the defendant as to the Safety Appliance Act changed. In the case of Brady v. Wabash Ry. Co., 1932, 329 Mo. 1123, 49 S.W.2d 24, at pages 28 and 29, 83 A.L.R. 665, the Court states: "The decided cases * * hold that the defective car must be in actual use by the defendant at the time of the injury in order to be within the provisions of the Safety Appliance Act." Accord: Clark v. Atlantic Coast Line

Railroad, 1957, 100 U.S.App.D.C. 279, 244 F.2d 368; Patton v. Baltimore & O. R. Co., 3 Cir., 1952, 197 F.2d 732.

■ The Safety Appliance Act was violated by the defendant only if the accident was caused by inefficient brakes and the defendant was hauling or using the car on its line at the time. Clark v. Atlantic Coast Line Railroad, supra; Patton v. Baltimore & O. R. Co., supra; Baltimore & O. R. Co. v. Hooven, 6 Cir., 1924, 297 F. 919; Risberg v. Duluth, M. & I. R. Ry. Co., 1951, 233 Minn. 396, 47 N.W.2d 113, certiorari denied, 1951, 342 U.S. 832, 72 S.Ct. 40, 96 L.Ed. 630; Paul v. Duluth, M. & I. R. Ry. Co., D.C. Minn.1950, 96 F.Supp. 578; Huck v. Chicago, St. P., M. & O. Ry. Co., 1958, 5 Wis.2d 130, 92 N.W.2d 352. The prior use by a delivering carrier of a car equipped with inefficient brakes is not a basis for absolute liability under the Safety Appliance Act. Clark v. Atlantic Coast Line Railroad, supra; Patton v. Baltimore & O. R. Co., supra.

■ After its employees had placed the defective box car upon the interchange track and set the hand brake thereon, the defendant had no connection with it until it was later returned to it by the plaintiff. The defendant was not hauling the box car at the time of Kleppe's injury. Nor can it realistically be said that the defendant was using the box car when Kleppe was injured. In view of the foregoing, it is the holding of this Court that the plaintiff was chargeable with a violation of the Safety Appliance Act so far as Kleppe was concerned, and the defendant was not.

■ Since the plaintiff had accepted the car in question, the defendant was not liable to Kleppe under the provisions of the Safety Appliance Act. The Federal Employers' Liability Act governs actions brought by railroad employees against their employers. Had Kleppe sued the defendant, that Act would have been inapplicable for the reason the defendant was not his employer. See Hartley v. Baltimore & O. R. Co., 3 Cir., 1952, 194 F.2d 560; Panichella v. Pennsylvania R.

Co., D.C.1958, 167 F.Supp. 345, 351; Matusiak v. Pennsylvania R. Co., D.C. 1955, 134 F.Supp. 681.

■ It is, of course, well settled that in order to sustain a claim for either indemnity or contribution there must be a common liability to the injured person. It is the assertion of the defendant that, since it owed no duty to Kleppe under either the Federal Employers' Liability Act or the Safety Appliance Act, it owed him no duty at all. Based on that premise the defendant contends that it was not under any liability to Kleppe for his injuries, and that such being the case common liability of it and the plaintiff was lacking.

The contention of the defendant in regard to the matter of its common liability has three facets. It is the claim of the defendant that the brake on the car in question was not defective at the time it was left on the transfer track. It is the further claim of the defendant that if the brake on the car in question was defective at the time the car was left on the transfer track, it was not such a defect as would have been discoverable in the exercise of reasonable care in the matter of inspection and that, therefore, it was not guilty of negligence. In that connection the defendant asserts that the rule of res ipsa loquitur is not applicable. It is the further claim of the defendant that if it were guilty of negligence in the matter of inspection, that negligence was not a proximate cause of the injuries sustained by Kleppe. The contention of the defendant in this regard is that the plaintiff was under a duty to inspect the car in question for defects before accepting it and that having failed to so do, such failure constituted an intervening and superseding cause which insulated the defendant from liability to Kleppe.

■ It is clear, as the defendant contends, that common liability in so far as defendant is concerned cannot be predicated upon the Federal Employers' Liability Act or upon the Safety Appliance Act. However, the fact that its liability cannot be predicated upon those Acts

does not prevent its liability from being predicated upon common law negligence. Therefore, its common liability would have to be predicated upon common law negligence. In the case of Patton v. Baltimore & O. R. Co., 3 Cir., 1952, 197 F.2d 732, the administratrix of a deceased employee of a private railroad brought an action against the Baltimore and Ohio Railroad Company to recover damages for the death of the employee. The employee received injuries resulting in his death by reason of the escape of cars on the private railroad due to defective brakes. The cars in question had, previous to the mishap, been delivered by the Baltimore and Ohio Railroad Company to the private railroad and accepted by it. The Court held that the Safety Appliance Act was not applicable. It stated (at page 741):

"It may be argued that the railroad did haul on its line cars equipped with defective brakes. But this is not an answer. Congress changed the common law liability of the carrier only in cases where the accident was caused by bad brakes *and* the railroad was using or hauling the car or cars on its line. The Act did not provide that ownership or *prior* use by the railroad of a car or cars with insufficient brakes would serve as the basis for the absolute liability imposed on the carrier by the Act."

The Court further held that the res ipsa loquitur rule was not applicable. The Court then stated (at page 741):

"But the fact, however, that the plaintiff may not predicate B & O's liability on the Safety Appliance Acts or on an inference of negligence arising from the escape of the cars alone does not absolve the railroad. The plaintiff has, we conclude, another and separate basis upon which to base her claims, that of negligence actionable at common law. The railroad had the duty of delivering its cars in reasonably safe condition, and it was required to

properly inspect them. Restatement, Torts, § 392; * * *."

In connection with the matter of common liability, the matter of the liability of the plaintiff will be further considered. This Court heretofore found that the plaintiff would be liable to Kleppe for violation of the Safety Appliance Act. The plaintiff could also have been under liability to Kleppe for negligence under Section 51, 45 U.S.C.A. of the Federal Employers' Liability Act, which made it liable in damages for injuries received by an employee by reason of its negligence. In an action by an injured employee against his employer based on the Federal Employers' Liability Act, such employee may assert liability on the part of the employer on the ground that the latter violated the Safety Appliance Act, which would be a non-negligence claim. Such employee could also assert liability on the part of the employer on the ground of negligence. They are separate grounds of liability. O'Donnell v. Elgin, Joliet & E. Ry. Co., 1949, 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187, 16 A.L.R.2d 646.

The matter of the liability of the plaintiff and the defendant to Kleppe for negligence will next be considered. That matter involves the question as to whether the brake was defective at the time the car was passed on by the defendant to the plaintiff and whether either or both were guilty of negligence in failing to discover the defect. The car was left on the transfer track at around 9:00 o'clock a. m. The hand brake was set at that time by one of the defendant's employees and was apparently operative in regard to the matter of setting the brakes. There was no movement of the car and no use of the hand brake between the time the car was set out and the time the car was picked up by the plaintiff around three hours later, at which time the hand brake was inoperative so far as releasing the brakes was concerned. As heretofore noted, the brake mechanism failed when the hand brake was used for the purpose of re-

leasing the brakes. It would seem to be a reasonable inference that the brake mechanism was defective at the time the car was passed on by the defendant and received by the plaintiff. It is the finding of the Court that such was the situation.

The next question is whether the defect was such as would have been discoverable in the exercise of reasonable care. The defendant chose to pass the car on to the plaintiff without having any inspection of it made by a car inspector to see if it was in a safe condition to be passed on. The time the car was last inspected by a car inspector of the defendant does not appear. The plaintiff chose to receive it without having any inspection of it made by a car inspector to see if it was in a safe condition to be received.

The defendant presented testimony that it was not the general custom of car inspectors to test hand brakes to see whether they were operative as to setting and releasing brakes. In the case of Gibson v. Shelby County Fair Ass'n, 1954, 246 Iowa 147, 65 N.W.2d 433, at pages 435, 436, the Iowa Court stated:

"Subject to certain exceptions not here applicable, the rule is well settled that evidence of the custom or common usage of a business or occupation is generally admissible on the question of negligence, although it is not a conclusive test, since the standard of care is ordinary care under the circumstances and the standard of custom cannot be substituted for it."

In the case of Wabash Railroad Company v. Hartog, 8 Cir., 1958, 257 F.2d 401, an employee of a consignee sustained injuries because of a defective door guide on a car furnished by the defendant railroad. In affirming the judgment in favor of the employee, the Court stated (at page 406):

"Appellant's car inspectors testified that this car was given the usual, customary and ordinary inspection and that nothing defective about this door guide was noted. However, the standard to be used and by which the defendant is to be judged is not the ordinary and customary practice or inspection of the Wabash Railroad, but what a reasonable and prudent person would be expected to exercise under the same or similar circumstances."

Therefore, as to whether the defendant and the plaintiff were guilty of negligence in this connection is to be determined by the trier of facts, in this case the Court. The case of Brady v. Terminal R. Ass'n of St. Louis, 1937, 340 Mo. 841, 102 S.W.2d 903, was, as heretofore noted, an action by an employee of one railroad against another railroad which had delivered for interchange purposes a car which had a defective handhold. The Court stated (at page 905 of 102 S.W.2d):

"In this connection we may add that a railroad company does not perform its duty to inspect handholds on freight cars for the safety of employees, by having its inspectors merely pass by and look at them, but the handholds must be subjected to a test similar to that they will receive in use. Baltimore & O. R. Co. v. Smith, 169 Ky. 593, 184 S.W. 1108, L.R.A.1918F, 1205, affirmed 246 U.S. 653, 38 S.Ct. 335, 62 L.Ed. 922; Felton v. Bullard, 6 Cir., 94 F. 781, 37 C.C.A. 1."

The contention of the defendant that the res ipsa loquitur rule is not applicable to the situation in this case has been heretofore referred to. The Iowa rule as to res ipsa loquitur is that where an injury occurs by instrumentalities under the exclusive control and management of the defendant and the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference that the defendant was negligent. Wellman v. Hawkeye-Security Insurance Company, Iowa 1959, 94 N.W.2d 761; Tedrow v. Des Moines Housing Corporation, 1958,

249 Iowa 766, 87 N.W.2d 463; John Rooff & Sons, Inc. v. Winterbottom, 1957, 249 Iowa 122, 86 N.W.2d 131; Weidert v. Monahan Post Legionnaire Club, Inc., 1952, 243 Iowa 643, 51 N.W.2d 400; Dodge v. McFall, 1951, 242 Iowa 12, 45 N.W.2d 501; Eaves v. City of Ottumwa, 1949, 240 Iowa 956, 38 N.W.2d 761, 769, 11 A.L.R.2d 1164. See also Slife, The Iowa Doctrine Of Res Ipsa Loquitur, 35 Iowa Law Review 393 (1950), and Highland Golf Club of Iowa Falls, Iowa v. Sinclair Refining Co., D.C. 1945, 59 F.Supp. 911. In the case of Eaves v. City of Ottumwa, supra, the Court states (at page 769 of 38 N.W.2d):

"Our decisions involving the res ipsa rule have uniformly stressed the necessity of defendant's complete and exclusive control of the instrumentalities that cause the injury."

It is clear that the defendant was not in complete and exclusive control of the instrumentalities which caused the injury and that the res ipsa loquitur rule is not applicable on the question of its negligence.

However, the fact that the res ipsa rule is not applicable as to the defendant does not prevent negligence on the part of the defendant being established by circumstantial evidence. In the case of Eaves v. City of Ottumwa, supra, the Court states (at page 769 of 38 N.W. 2d):

"The res ipsa rule should not be confused with the proposition that negligence, like other facts, may be proven by circumstantial evidence. Existence of circumstantial evidence of negligence in a particular case does not mean the res ipsa doctrine is applicable in that case. Nor does rejection of such doctrine in a given case mean that negligence may not be established in that case by circumstantial evidence."

The evidence bearing upon the matter of the defect in the hand brake and its discoverability by the parties in the exercise of reasonable care is circumstantial in character. The Iowa rule as to proof by circumstantial evidence in a civil case was recently stated by the Iowa Supreme Court in the case of Brower v. Quick, 1958, 249 Iowa 569, 88 N.W.2d 120. In that case the question involved was as to proof of negligence and freedom from contributory negligence by circumstantial evidence. The Court stated (at page 123 of 88 N.W.2d):

"We are firmly committed to the rule that to recover one need not prove his theory of causation by evidence so clear as to exclude every other possible theory. The evidence must be such as to make his theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence."

For decisions by the United States Court of Appeals for this Circuit on this phase where the Iowa law was applicable, see Ford Motor Company v. Mondragon, 8 Cir., 1959, 271 F.2d 342; Little v. Watkins Motor Lines, Inc., 8 Cir., 1958, 256 F.2d 145; Guyer v. Elger, 8 Cir., 1954, 216 F.2d 537, certiorari denied, 1955, 348 U.S. 929, 75 S.Ct. 342, 99 L.Ed. 728. In those decisions the Court refers to the "liberalized" Iowa rule as to proof by circumstantial evidence.

The Iowa Supreme Court has rejected the rule that an inference may not be based upon another inference. Soreide v. Vilas & Company, 1956, 247 Iowa 1139, 78 N.W.2d 41; John Rooff & Sons, Inc. v. Winterbottom, 1957, 249 Iowa 122, 86 N.W.2d 131, 134. In the case of Soreide v. Vilas & Company, supra, the Iowa Court stated (at page 44 of 78 N.W.2d):

"We disagree with the contention defendants stress that an inference may not be based upon another inference or upon a fact the existence of which itself rests upon an inference. While some authorities use substantially the statement defendants urge upon us it is unsound and, like many other courts, we have rejected it."

See also Fegles Const. Co. v. McLaughlin Const. Co., 9 Cir., 1953, 205 F.2d 637, 640.

 The Court is of the view that it can reasonably be inferred that the hand brake on the car in question was defective at the time the defendant passed the car in question on to the plaintiff and at the time it was received by the plaintiff. The Court is also of the view that it can reasonably be inferred that the said defect was discoverable in the exercise of reasonable care in the matter of inspection.

The Court is of the view that the hypothesis that the hand brake on the car in question was defective at the time the car was passed on by the defendant to the plaintiff and that such defective condition of the car was discoverable in the exercise of reasonable care is more reasonably probable than any other hypothesis based on the evidence in this case.

It is the finding of the Court that both the plaintiff and the defendant were guilty of negligence in connection with the matter of inspection of the car and the discovery of the defect in question.

 The defendant contends, by way of alternative, that, even if it were guilty of negligence in connection with the inspection of the car in question, its negligence did not give rise to liability on its part to Kleppe because such negligence was not a proximate cause of his injuries. The defendant asserts that the subsequent negligence of the plaintiff broke the causal connection between its negligence and the injury to Kleppe. There inheres in that assertion the theory that the subsequent negligence of the plaintiff constituted an independent intervening cause. The theory of independent intervening cause is related to the matter of proximate cause. That theory acts as a limitation on the general rule of proximate cause, in that an independent intervening cause is regarded as breaking the chain of causation set in motion by the original act of negligence and insulates the original negligent actor from liability for an injury which may result.

In 152 A.L.R. 1313 there is an annotation on the liability of a railway company for personal injury, other than to a passenger, caused by defective condition of a car delivered to another railway company. The annotation cites and discusses the cases dealing with situations where one carrier delivers a defective car to another carrier and the receiving carrier is held liable in damages either to one of its own employees or to the employee of a consignee of the car.

The courts are divided on the question of the liability of the delivering carrier in such a case. The defendant in this connection cites and relies upon the following cases: Roberts v. Southern Pac. Co., 1921, 54 Cal.App. 315, 201 P. 958 (employee of receiving carrier); Ruiz v. Midland Valley Railroad Company, 1944, 158 Kan. 524, 148 P.2d 734, 152 A.L.R. 1307 (employee of consignee); Missouri, K. & T. Ry. Co. v. Merrill, 1902, 65 Kan. 436, 70 P. 358, 59 L.R.A. 711, 93 Am.St.Rep. 287 (employee of last carrier); Glynn v. Central R. of New Jersey, 1900, 175 Mass. 510, 56 N.E. 698, 78 Am.St.Rep. 507 (employee of receiving carrier); Kurtz v. Detroit T. & I. R. Co., 1927, 238 Mich. 289, 213 N.W. 169 (employee of receiving carrier); Lellis v. Michigan Central R. Co., 1900, 124 Mich. 37, 82 N.W. 828, 70 L.R.A. 598 (employee of receiving carrier); and Brady v. Terminal R. Ass'n. of St. Louis, 1937, 340 Mo. 841, 102 S.W. 2d 903, reversed, 1938, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614 (employee of receiving carrier). Those cases hold that the carrier which delivers a defective car to another carrier is not liable to an employee of the receiving carrier or to the employee of a consignee to whom the receiving carrier delivers the car. The basis of the holdings of those cases is clearly set forth in the case of Missouri, K. & T. Ry. Co. v. Merrill, supra. In that case the Court states (at page 360 of 70 P.):

"A recovery has been denied in cases like the one at bar on two

grounds: First. There being a positive duty resting on the receiving railway company to inspect the car turned over to it for transportation by another company, to the end that its employés may not be injured by defects existing before its receipt, the omission or negligent discharge of such duty breaks the causal connection between the negligence of the company tendering the defective car and the plaintiff's injury. In such cases the failure to inspect, or the negligent manner of doing it, is the proximate cause of the injury to the employé, and the negligence of the company turning over the unsafe car is the remote cause. The failure to discharge the obligation to inspect interposes an independent agency, which severs the causal connection between the company first guilty of negligence and the hurt."

There are several courts which are not in agreement with the holdings of those cases. Some of the cases contra are: Pennsylvania R. Co. v. Snyder, 1896, 55 Ohio.St. 342, 45 N.E. 559, 60 Am.St.Rep. 700 (employee of receiving carrier); Louisville & N. R. Co. v. Burch, 1913, 155 Ky. 245, 159 S.W. 782 (employee of consignee); Moon v. Northern Pac. R. Co., 1891, 46 Minn. 106, 48 N.W. 679, 24 Am.St.Rep. 194 (employee of receiving carrier). The Moon case is often cited on this question. In that case one carrier delivered a car to another carrier. An employee of the receiving carrier was precipitated to the ground and killed because of a claimed defective brake staff. The personal representative of the deceased employee brought an action against both carriers for negligence in the matter of inspection of the brake staff. A jury verdict was returned against the delivering carrier only. The delivering carrier appealed and on appeal the verdict against it was sustained. The car at the time of the interchange had been inspected by car inspectors of the two carriers who inspected together, but they had not discovered the defect. The Court in its opinion stated (at page 680 of 48 N.W.):

" * * * the company owning the car should be held responsible for the consequences of its own wrongful or negligent acts or omissions, notwithstanding concurring negligent acts or omissions of the company receiving the car. The negligence of the latter does not excuse or relieve the former from liability for injuries resulting from its negligence. * * * ."

In the case of Teal v. American Mining Co., 1901, 84 Minn. 320, 87 N.W. 837, a carrier delivered a car to a receiving carrier (a mining company). An employee of the receiving carrier sustained injury because of a claimed defect in the brake wheel. He sued both the delivering carrier and the receiving carrier. The demurrer of the delivering carrier to the complaint was overruled by the trial court. On appeal that ruling was sustained. The Minnesota Supreme Court stated (at page 837 of 87 N.W.):

"The reason urged on behalf of the railway company why the complaint does not state a cause of action as to it is, in effect, that its alleged negligent act was not the proximate cause of the plaintiff's injury, because the negligent acceptance of the car by the master, the mining company, with actual or constructive notice of its dangerous condition, was the intervening efficient cause of the injury complained of. Therefore, it is claimed, there was no natural and continuous sequence unbroken by any cause between the alleged negligent act of the railway company and the plaintiff's injury. It does not, however, follow that the negligent act of the railway company must have been the sole cause of the injury in order to render its negligence the proximate cause, for the allegations of the complaint show that the negligence of the mining company was a concurring and contributing cause of the injury. If the allegations of the complaint be true, the railway company, knowing the car to be in an unsafe condition, and knowing that

it was to be used by the employés of the mining company, transferred it to the line of the latter for such purpose. Except for this negligent act, the plaintiff would not have been injured. It is equally true that, if the mining company had not negligently received the car upon its line for the use of its employés, the plaintiff would not have been injured, but this negligence of the mining company, which may have been solely of a negative character,—that is, a failure to use due care to inspect and repair the car,—was not a new and independent cause, interrupting the continuous sequence between the railway company's negligence and the injury of the plaintiff. In its last analysis the negligence of the mining company was the failure to interrupt the consequences likely to and which did flow from the original negligent act of the railway company by inspecting and repairing the car before requiring the plaintiff to use it,—a contributing, not the sole proximate, cause. * * *."

The Iowa law being applicable, the question arises whether under the Iowa law the negligence of the plaintiff constituted an intervening and superseding cause which would insulate the defendant against liability for its negligence. The parties have cited no Iowa cases bearing on this phase of the case and apparently there are no cases directly in point.

Since the Iowa Supreme Court has not expressly passed upon the question of which of the two rules it would follow, it would seem necessary to give consideration to certain general rules followed by it in negligence cases. As noted, the question involves proximate cause, independent intervening cause, and concurrent negligence.

The Iowa Supreme Court has stated that by proximate cause is meant that cause which in its natural and continuous sequence, unbroken by any new cause, produces an event and without which the event would not have occurred. Brewer v. Johnson, 1955, 247 Iowa 483, 72 N.W.2d 556, 558; Roller v. Independent Silo Co., 1951, 242 Iowa 1277, 49 N.W.2d 838, 842. See cases cited in Samuelson v. Sherrill, 1938, 225 Iowa 421, 280 N.W. 596, 598. It has also frequently been held by the Iowa Supreme Court that if the negligence of one party concurs with the negligence of another person in causing injury to a third person, such negligence is a proximate cause of the injury even though it is not the sole cause. Dennis v. Merrill, 1934, 218 Iowa 1259, 257 N.W. 322; Kuhn v. Kjose, 1933, 216 Iowa 36, 248 N.W. 230; Johnson v. McVicker, 1933, 216 Iowa 654, 247 N.W. 488. In other words, where the feature of concurrent negligence is present there may be as many proximate causes of an injury as there are actors. In the case of Swaim v. Chicago, R. I. & P. Ry. Co., 1919, 187 Iowa 466, 174 N.W. 384, at page 386, the Court, in discussing proximate cause, stated:

> "Nor will the fact that some other cause operates with the defendant's negligence to produce the injury relieve the defendant if the injurious result is traceable in some material degree to his want of due care."

One of the leading Iowa cases on the subject of concurrent negligence is the case of McDonald v. Robinson, 1929, 207 Iowa 1293, 224 N.W. 820, 62 A.L.R. 1419. In that case the Court stated (at page 821 of 224 N.W.):

> "If the acts of two or more persons concur in contributing to and causing an accident, and but for such concurrence the accident would not have happened, the injured person may sue the actors jointly or severally, * * *."

There may be a single proximate cause of a mishap, in which event it is referred to as the sole proximate cause. There may be multiple proximate causes of a mishap, in which event they are referred to as concurring proxi-

mate causes. In the latter situation the negligent actors are concurrent tortfeasors. Where two persons are both guilty of negligence preceding a mishap in which a third person is injured, the circumstances may be such that the chain of causation of the negligence of the first tortfeasor would be regarded as broken by the negligence of the last tortfeasor. Where such is the case, the negligence of the last tortfeasor is referred to as an independent intervening cause. In such a situation the first tortfeasor would not be regarded as a concurrent tortfeasor, and he would be absolved of liability to the injured person. The Iowa Supreme Court follows the general rules just stated.

Before considering certain Iowa cases bearing upon this subject, another matter will first be considered. It would seem that the real difference between the courts which follow the rule relied upon by the defendant and those that do not follow that rule is as follows: the former hold that as a matter of law the negligence of the delivering carrier is not a proximate cause of the injury sustained by the third person, while the latter hold that the question of whether the negligence of a delivering carrier was or was not a concurring proximate cause of the injury is for the jury. In other words, in the one line of cases the matter of causal relation between the negligence of the delivering carrier and the injury to a third person is dealt with as a question of law, while in the other line of cases it is dealt with as a question of fact to be determined by the trier of facts. Certain Iowa cases that bear upon the question of causal relation will next be considered.

In the case of Lindquist v. Des Moines Union Ry. Co., 1947, 239 Iowa 356, 30 N.W.2d 120, at page 128, the Court stated:

"A subsequent and independent intervening cause will not absolve a defendant of negligence if it might reasonably have been foreseen. * * * If the original wrong concurs with the intervening cause and

both act proximately in producing the injury, both as a rule are proximate causes."

The United States Court of Appeals for this Circuit in the case of Lemke v. Chicago, R. I. & P. R. Co., 8 Cir., 1952, 195 F.2d 989, 992, in which the Iowa law was applicable, quoted the statement of the Iowa Supreme Court just referred to.

The case of Knaus Truck Lines, Inc. v. Commercial Freight Lines, 1947, 238 Iowa 1356, 29 N.W.2d 204, involved a multiple motor vehicle mishap. The Knaus Truck Lines, referred to in the opinion as Knaus, brought an action against two of the participants to recover damages sustained by it in the mishap. One Merrifield was the driver of one of the motor vehicles involved. The trial court directed a verdict in favor of the defendants. On appeal the case was reversed. The Court stated (at page 209 of 29 N.W.2d):

"Nor do we think defendants were entitled to a directed verdict against Knaus on the ground that Merrifield's claimed negligence, as a matter of law, was an independent intervening cause which was solely responsible for the collision between Knaus and Merchants. * * * It is well settled that where a third party's subsequent act, whether negligent or not, is relied upon as an independent intervening cause it will not have that effect if it or a similar act might reasonably have been foreseen."

The Court, in discussing the issue of whether the subsequent cause might reasonably have been anticipated, stated (at pages 209–210 of 29 N.W.2d):

"That this issue, if it was such, was for the jury, not for the court, see Blessing v. Welding, 226 Iowa 1178, 1182–1183, 286 N.W. 436, and authorities cited; Johnson v. Overland Co., 227 Iowa 487, 498, 288 N. W. 601."

In the case of Lindquist v. Des Moines Union Ry. Co., 1947, 239 Iowa 356, 30

N.W.2d 120, there was involved the question of whether the negligence of the defendant was a concurring proximate cause of a mishap. The trial court directed a verdict for the defendant upon the ground, *inter alia*, that if there was any negligence on the part of the defendant it was not a proximate cause of the mishap. In its opinion reversing the trial court, the Court stated (at page 127 of 30 N.W.2d):

"The established rule in this state has been that whether negligence is a proximate cause of an injury is always a question for the jury when different minds might reasonably reach different conclusions."

In the recent case of Priebe v. Kossuth County Agricultural Association, Inc., Iowa 1959, 99 N.W.2d 292, at page 296, the Court stated:

"In order to constitute negligence it is not necessary that defendant could have foreseen the particular injury that resulted provided it should have foreseen its omission to act would probably result in injury of some kind to some person."

In the case of Lawson v. Fordyce, 1943, 234 Iowa 632, 12 N.W.2d 301, 307, the Court stated that, save in exceptional cases, the question of proximate cause is for the jury.

The cases of Dilliner v. Joyce, 1942, 233 Iowa 279, 6 N.W.2d 275, and Dolan v. Bremner, 1935, 220 Iowa 1143, 263 N.W. 798, were both actions in which the plaintiff sought to recover for injuries sustained in a collision between a motor vehicle and a train which was standing on a crossing. In each case the plaintiff was a passenger in the motor vehicle. The Iowa Supreme Court held that as a matter of law the negligence of the drivers of the motor vehicles in running into the train absolved the railroad companies from any liability for their negligence, if any, in connection with the collision. However, in the case of Lindquist v. Des Moines Union Ry. Co., 1947, 239 Iowa 356, 30 N.W.2d 120, the Court expressly overruled the

Dolan and Dilliner cases and held that the question of causal connection was for the jury.

The whole trend of the recent decisions of the Iowa Supreme Court is to the effect that, save in exceptional cases, the question of causal connection between the negligence of a person and the injury of which it is claimed to be a proximate cause is one to be determined by the jury and not one to be dealt with as a question of law by the Court. That Court has in its recent decisions tended to emphasize that questions as to proximate cause, independent intervening negligence, and concurrent negligence are peculiarly questions for the trier of facts.

It is the view and holding of the Court that under the Iowa law the question as to whether the negligence of the defendant was a proximate cause of the injury to Kleppe is to be determined by it as the trier of facts.

The defendant, when it tendered the car in question for interchange without having had it inspected by a car inspector, knew that the plaintiff would use it for a period of time without having it inspected by a car inspector. It was reasonably to be foreseen by the defendant that during that period injury of some kind to some person would probably result from its negligence and the negligence of the plaintiff. It is the finding of the Court that the negligence of the defendant was a concurring proximate cause of the injury to Kleppe.

The defendant makes certain contentions concerning common liability which have to do with contributory negligence.

If Kleppe had brought an action against the plaintiff based upon the Federal Employers' Liability Act, his contributory negligence, if any, would not bar his recovery, but would go only to the diminution of damages. Section 53, 45 U.S.C.A. In Iowa, in actions by an employee against an employer the rule is the same. Rule 97, Iowa Rules of Civil Procedure, 58 I.C.A. This Rule, of course, is of importance only where

the employee is not within the coverage of the Iowa Workmen's Compensation Act, I.C.A. § 85.1 et seq. Since Kleppe was not within the coverage of that Act, under the Iowa law his contributory negligence, if any, would not bar his recovery in any action by him against the plaintiff based on common law.

█ The first question presented is whether common liability is negatived by the fact that contributory negligence would not be a defense, under either the Federal Employers' Liability Act or the Iowa law, to an action brought by Kleppe against the plaintiff. That question was presented in the case of Zontelli Brothers v. Northern Pacific Railway Co., 8 Cir., 1959, 263 F.2d 194, where a railroad employee sustained injuries in a collision between the train on which he was working and a motor vehicle operated by an employee of Zontelli Brothers. The trainman recovered judgment against the railroad company under the Federal Employers' Liability Act. The railroad company then sought contribution from Zontelli Brothers. Zontelli Brothers contended that, because of the difference in the applicable law relating to the liability of the railroad to its employee under the Federal Employers' Liability Act and Zontelli Brothers' liability to that employee under applicable Minnesota law, there was no common liability. The United States Court of Appeals for this Circuit held that such difference in the applicable law relating to liability did not destroy common liability for purposes of contribution.

The defendant further contends that contributory negligence on the part of Kleppe would bar any claim he might have against it, and thus there would be no common liability. In the recent decision of Hawkeye-Security Insurance Company v. Lowe Construction Co., Iowa 1959, 99 N.W.2d 421, where the plaintiff sought contribution in a case arising under the Iowa law, the Court stated that the party seeking contribution had the burden of proving, *inter alia*, that the person who sustained the injury was free from contributory negli-

gence as to the party from whom contribution was sought. See also Ford Motor Company v. Mondragon, 8 Cir., 1959, 271 F.2d 342.

In connection with the contentions of the parties regarding contributory negligence, some other Iowa cases will be next considered.

In the case of Towberman v. Des Moines City Ry. Co., 1927, 202 Iowa 1299, 211 N.W. 854, the Court declared: "We have many times stated the rule as to contributory negligence. It is well stated in Banning v. C., R. I. & P. Ry. Co., 89 Iowa 74, at page 81, 56 N.W. 277, 279, where we said: 'If the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery.'"

In Hoegh v. See, 1933, 215 Iowa 733, 246 N.W. 787, at page 789, the Court, after referring to the Towberman case, supra, and quoting the above passage from the Banning case, declared:

"That quotation in the Towberman case was selected after a review of many decisions. We made the selection because of our desire to present the quotation as a model for future instructions. Such model later has been followed and approved. Stilson v. Ellis, 208 Iowa 1157, 225 N.W. 346; O'Hara v. Chaplin, 211 Iowa 404, 233 N.W. 516."

In Yance v. Hoskins, 1938, 225 Iowa 1108, 281 N.W. 489, 495, 118 A.L.R. 1186, the Court referred to and approved as a model, despite the appellant's contention that the Court erred in using the word "directly", the following instruction (at page 494 of 281 N.W.):

"'It is a rule of law that one who is injured through the fault or negligence of another cannot recover for the damages occasioned thereby, if he, by any want of ordinary care on his part, contributed in any way or in any degree *directly* to the injuries of which he complains. And in this case, before the plaintiff can recover, he must show that he did not, by any negligence or want of ordinary care

on his part, in any way or in any degree, contribute *directly* to the injuries of which he complains.' "

In the case of Brewer v. Johnson, 1955, 247 Iowa 483, 72 N.W.2d 556, at page 558, the Court stated:

"In damage actions based upon negligence, two factors are always present. Actionable negligence and contributory negligence. * * * To be actionable, the negligence must be a proximate cause of the injury. * * * Contributory negligence is 'any negligence upon the part of the Plaintiff which "contributed in any way or any degree directly to the injury" or damages sustained'. * * * We think the distinction is well stated in Pappas v. Evans, 242 Iowa 804, 814, 48 N.W. 2d 298, 304, supra, where quoting from Restatement of the Law, Torts, Section 463, Comment (b), it is stated: ' "Contributory negligence differs from the negligence which subjects the actor to liability for harm done to others in one important particular. Negligence is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it. * * * " ' "

While the Iowa Supreme Court has never clearly pointed out the difference between negligence which is a proximate cause of an injury and negligence which contributes in any way or in any degree directly to the injury, it would seem that the difference relates to causal relation.

In the present case the burden was upon the plaintiff to establish by a preponderance or greater weight of the evidence that Kleppe was free from any negligence which contributed in any way or in any degree directly to his injury. It is the claim of the defendant that the plaintiff did not do so, that hence the plaintiff has not established that the defendant was liable to Kleppe, and that therefore there was no common liability.

The only action on the part of Kleppe that is pointed to by the defendant as constituting contributory negligence was Kleppe's attempt to loosen the stuck brakes by moving the car. Kleppe testified that it was the usual procedure of trainmen to try to loosen stuck brake shoes in the manner attempted by him, and that stuck brake shoes could frequently be loosened in that way. While the fact that such procedure was usual is not determinative of the question of contributory negligence on his part, this Court is of the view that it cannot be said that Kleppe, in attempting to loosen the stuck brake shoes in the manner in which he did, failed to exercise ordinary care for his own safety.

It is the view and finding of the Court that Kleppe was free from contributory negligence.

It is the holding of the Court that the plaintiff and the defendant were under a common liability to Kleppe. Such being the situation, there is next to be considered the questions whether the plaintiff is entitled to indemnity or contribution from the defendant.

The claim of the plaintiff for indemnity is stated as follows in its complaint:

"7. That in paying Kleppe the said Seventy Thousand Dollars ($70,000.00) in settlement, the plaintiff herein was discharging a secondary liability only, and that the primary liability and primary negligence was that of the defendant herein, in the following particulars:

"(a) In hauling, or permitting to be hauled or used on its line a car not equipped with efficient hand brakes, and tendering such a car to the plaintiff for use of plaintiff's employees in violation of Section 11 of the Safety Appliance Act. (45 U.S.C.A. Section 11.)

"(b) In tendering to the plaintiff for the use of its employees a car with a defective hand brake, without having made an inspection thereof.

"(c) In tendering to the plaintiff for the use of its employees a car

with a defective hand brake, without having made repair thereof."

The claim of the plaintiff for contribution is stated as follows:

"4. That neither plaintiff nor defendant were guilty of intentional wrong, moral turpitude or concerted action and therefore plaintiff is entitled to contribution from the defendant to the extent of one-half (½) of what it has been compelled to pay."

The defendant, in answer to the claim of the plaintiff for indemnity, states:

"This defendant denies * * * that in making the settlement with Kleppe and in making payment to him, plaintiff was merely discharging a secondary liability and alleges that plaintiff was under a primary liability to Kleppe by reason of hauling and using on its line of railroad a car with an inefficient and defective hand brake. This defendant alleges that it was under no duty or obligation to Kleppe with respect to the said car; that it had effected delivery of the car to plaintiff at Goldfield, Iowa, and plaintiff accepted the same before Kleppe was injured."

In answer to the claim of the plaintiff for contribution, the defendant states:

"This defendant denies that plaintiff and defendant were joint tortfeasors, and denies that both plaintiff and defendant were negligent in failing by proper inspection to discover the defective brake and make proper repairs thereto. This defendant states and alleges that plaintiff was liable to B. L. Kleppe because the injuries were proximately caused by plaintiff's violation of the Federal Safety Appliance Act, in that it hauled and used upon its line of railroad a car equipped with an inefficient and defective hand brake as required by the Safety Appliance Act; that plaintiff was liable to said B. L. Kleppe without regard to any negligence or lack of negligence on its part * * *.

"This defendant * * * specifically states * * * that this defendant was under no duty or obligation to B. L. Kleppe, or to plaintiff, with respect to the condition of said car and the brake equipment thereof."

The terminology used by the courts in stating the tests, formulas, and rules applicable in cases in which indemnity is sought has in many cases made for confusion and inconsistency. See discussion, Davis, Indemnity Among Negligent Tortfeasors: A Proposed Rationale, 37 Iowa Law Review 517, 539, 544 (1952). The courts most frequently employ the terms "active negligence" and "passive negligence". It would seem that the "active-passive negligence" formula is a very slippery and elusive formula. It is the one used in New York. The serious problems and difficulties encountered by the courts in that state in applying that formula are stated in the case of Sobel v. City of New York, 1958, 14 Misc.2d 25, 178 N.Y.S.2d 821, 825. See also Falk v. Crystal Hall, Inc., 1951, 200 Misc. 979, 105 N.Y.S.2d 66, 70, 71. Other courts have experienced similar difficulties. See Gulf, Mobile & Ohio R. Co. v. Arthur Dixon Transfer Co., 1951, 343 Ill.App. 148, 98 N.E.2d 783, 788. It has been noted that while tortious conduct involved in one case is deemed to constitute "active" negligence, yet the same tortious conduct in another case will be deemed to constitute "passive" negligence. Davis, supra, p. 540. It has also been pointed out that the presence or absence of motion on the part of a tortfeasor is not determinative. See Gulf, Mobile & Ohio R. Co. v. Arthur Dixon Transfer Co., supra.

The Iowa rule as to indemnity has been considered by the Iowa Supreme Court in a number of cases. Among such cases are: Hathaway v. Sioux City, 1953, 244 Iowa 508, 57 N.W.2d 228; Weidert v. Monahan Post Legionnaire Club, Inc., 1952, 243 Iowa 643, 51 N.W.2d 400;

Rozmajzl v. Northland Greyhound Lines, 1951, 242 Iowa 1135, 49 N.W.2d 501; Hawley v. Davenport, R. I. & N. W. Ry. Co., 1951, 242 Iowa 17, 45 N.W.2d 513; City of Des Moines v. Barnes, 1947, 238 Iowa 1192, 30 N.W.2d 170; Horrabin v. City of Des Moines, 1924, 198 Iowa 549, 199 N.W. 988, 38 A.L.R. 554; Sweet v. Atkinson, 1921, 191 Iowa 645, 182 N.W. 793; City of Des Moines v. Des Moines Water Company, 1920, 188 Iowa 24, 175 N.W. 821; Pfarr v. Standard Oil Co., 1914, 165 Iowa 657, 146 N.W. 851, L.R.A. 1915C, 336; Chicago & Northwestern Ry. Co. v. Dunn, 1882, 59 Iowa 619, 13 N.W. 722; City of Ottumwa v. Parks, 1876, 43 Iowa 119. See Ford Motor Company v. Mondragon, 8 Cir., 1959, 271 F.2d 342; American District Telegraph Co. v. Kittleson, 8 Cir., 1950, 179 F.2d 946; Bolton v. Ziegler, D.C. N.D.Iowa 1953, 111 F.Supp. 516, 521–523; Denver-Chicago Trucking Co. v. Lindeman, D.C.N.D.Iowa 1947, 73 F. Supp. 925, 933; City of Des Moines v. Barber Asphalt Co., D.C.S.D.Iowa 1913, 208 F. 828; Iowa Home Mutual Casualty Co. v. Farmers Mut. Hail Ins. Co., 1955, 247 Iowa 183, 73 N.W.2d 22, 26.

In the early Iowa case of Chicago & Northwestern Ry. Co. v. Dunn, 1882, 59 Iowa 619, 13 N.W. 722, the situation was that the plaintiff railroad company had been held responsible for killing a third person's horse on its line under an Iowa fencing statute which imposed absolute liability. The defendant, a farmer, had removed a gate in the defendant's right of way fence and the horse in question had strayed onto the tracks. The Court held that the plaintiff was entitled to indemnity. The Court in its opinion stated that the defendant was guilty of an active wrong and that the plaintiff was guilty of a passive wrong.

The Iowa Court in its later opinions has made reference to the active-passive terminology employed in the case of Chicago & Northwestern Ry. Co. v. Dunn, supra. In the recent case of Best v. Yerkes, 1956, 247 Iowa 800, 77 N.W.2d 23, at page 28, 60 A.L.R.2d 1354, the Iowa Court stated:

"We have spoken of 'active' and 'passive', and of 'primary' and 'secondary', negligence. But the terms aid little, and in fact are often difficult to define."

Claims for indemnity in Iowa have arisen out of many different relationships and out of many different factual situations. In some instances the claims arose in cases where the liability of the party seeking indemnity was purely constructive or derivative and there was no personal fault on the part of such party. See Iowa Home Mut. Cas. Co. v. Farmers Mut. Hail Ins. Co., 1955, 247 Iowa 183, 73 N.W.2d 22, at page 26, where the Court states that it is in accord with Section 96, Restatement of the Law, Restitution, which reads as follows:

"A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability."

See also Best v. Yerkes, 1956, 247 Iowa 800, 77 N.W.2d 23, 27. However, in instances in which a claim for indemnity is asserted and it appears that both the party seeking indemnity and the party from whom indemnity was sought were both guilty of personal fault, the legal situation becomes difficult. In some of such cases the Iowa Supreme Court has made use of the active-passive test and in others the primary and secondary liability test. While the primary and secondary liability test is not quite as baffling as the active-passive test, yet it still leaves for solution the matter of ascertaining which liability is primary and which is secondary. In the present case the plaintiff, as noted, relies upon the primary-secondary test. It is believed that a recent development in the Iowa law may tend to throw some light on the question of indemnity.

Although the Iowa Supreme Court had never expressly so held, many members

of the Iowa Bar and many Iowa trial judges had long assumed that there could be no contribution between joint tortfeasors. The judge of this Court so assumed. Bolton v. Ziegler, D.C.N.D.Iowa 1953, 111 F.Supp. 516, 522. The United States Court of Appeals for this Circuit also so assumed. American District Telegraph Co. v. Kittleson, 8 Cir., 1950, 179 F.2d 946, 951. However, in 1956, out of a clear judicial sky, so to speak, the Iowa Supreme Court made the pronouncement that in a proper situation contribution from one joint tortfeasor to another could be required. Best v. Yerkes, 1956, 247 Iowa 800, 77 N.W.2d 23, 60 A.L.R.2d 1354. See Comment, 42 Iowa. Law Review 450 (1957), and Thomas, Contribution Between Joint Tort-Feasors As Affected By The Yerkes Case, 6 Drake Law Review 30 (1956).

Prior to the pronouncement of the Iowa Supreme Court in Best v. Yerkes, supra, that there could be contribution among concurrent tortfeasors, a concurrent tortfeasor who had discharged a common liability was, under the Iowa law, faced with an all-or-nothing situation. Because of that situation, a concurrent tortfeasor who had discharged the common liability but who was not free from personal fault generally tried to fit his claim into one of the indemnity semantic cubicles, more generally the "active-passive" or "primary-secondary" cubicle, and the courts in Iowa were continually being urged to allow indemnity upon the theory that the indemnity claimant had successfully fitted his claim into one of those cubicles. In many such cases the claimant, while unable to establish a claim for indemnity, did establish a strong case for contribution, but contribution was regarded as not being available.

In the case of Best v. Yerkes, supra, the Iowa Supreme Court, in pronouncing the rule allowing contribution among concurrent tortfeasors, expressed its dissatisfaction (at page 28 of 77 N.W.2d) with trying to work out justice between concurrent tortfeasors, both of whom were guilty of personal fault, by means of indemnity alone and then by means of confusing semantic formulas.

Because of the recent origin of the Iowa rule permitting contribution among joint tortfeasors, there are few Iowa cases bearing upon it. It was pronounced in Best v. Yerkes, supra. It was referred to in Van Tiger v. Hendricks, 1957, 249 Iowa 25, 85 N.W.2d 543, 545. It was applied in the cases of Constantine v. Scheidel, 1958, 249 Iowa 953, 90 N.W. 2d 10, and Hawkeye-Security Insurance Company, Inc. v. Lowe Construction Co., Iowa 1959, 99 N.W.2d 421. The present applicability and scope of the rule has to be ascertained from the statements of the Iowa Supreme Court in its opinions in the cases of Best v. Yerkes, supra, Constantine v. Scheidel, supra, and Hawkeye-Security Insurance Company, Inc. v. Lowe Construction Co., supra.

The case of Best v. Yerkes, supra, had to do with a mishap involving three motor vehicles which were being operated at the time by Best, Yerkes, and Cross. Best brought an action against Yerkes to recover damages claimed to have been sustained by him as a result of the latter's negligence. By leave of Court, Yerkes made Cross a cross-defendant and filed a cross-petition against him under Rule 33(b) of the Iowa Rules of Civil Procedure. In his cross-petition Yerkes asked for indemnity or contribution from Cross in connection with any judgment recovered by Best. The trial court later set aside the order which brought in Cross as a defendant. The Iowa Supreme Court granted an interlocutory appeal from the action of the trial court in setting aside the order as to Cross. On appeal the Court held that under Rule 33(b) of the Iowa Rules of Civil Procedure the matter of bringing in a third party defendant is addressed to the discretion of the Court and that no abuse of discretion was shown. Before so holding, the Court discussed at length the matter of contribution among tortfeasors. After referring to the majority rule which denies contribution and to the minority rule which permits con-

tribution, the Court stated (at page 28 of 77 N.W.2d):

"Consequently we conclude that the minority rule which permits contribution or indemnity in negligence cases has the firmer foundation."

The Court further stated (at page 29 of 77 N.W.2d):

"Without extending this division of the opinion further by a discussion of the applicable reasoning and authorities, we are of the opinion that appellee Cross' attempt to uphold the ruling of the trial court on the theory that in no event could there be a recovery over by Yerkes must fail. There is here no claim or showing of an intentional wrong, or of moral turpitude or any concerted action by the alleged tortfeasors. We hold the true rule to be that under such circumstances there is at least a right of equitable contribution between them."

It is pointed out in the Comment, 42 Iowa Law Review 450 (1957), that the statements by the Court in Best v. Yerkes, supra, in regard to permitting contribution among joint tortfeasors were dicta. However, whether the statements constituted judicial dicta or obiter dicta is not now material, for in the later cases of Constantine v. Scheidel, supra, and Hawkeye-Security Insurance Company, Inc. v. Lowe Construction Co., supra, the Court followed and applied the rule pronounced. The case of Constantine v. Scheidel, supra, will next be considered. In that case the parties to the action were landlord and tenant in relation to a certain building. A professional window washer was injured while washing the windows of the building because of a defective window frame. He recovered damages against the landlord for his injuries. The landlord then sought to recover indemnity or contribution from the tenant, and the case involved that matter. The Court held that, by reason of the relationship between the parties, both had breached a duty owing to the window washer concerning inspection of the window and discovery of

its defective condition. The Court stated (at page 13 of 90 N.W.2d):

"Both the tenant and the landlord were negligent in their duty toward the window washer * * *. There is no claim or showing that these parties were guilty of an intentional wrong or of moral turpitude, or any concerted action. * * * There is little of a persuasive nature that one was more at fault, wrong or remiss in his duty, than the other, so as to *bar contribution and permit indemnity.*" (Italics supplied.)

In the present case neither party was guilty of an intentional wrong or moral turpitude, and there was no concerted action. There is "little of a persuasive nature that one was more at fault, wrong or remiss" than the other. Both were guilty of negligence in the matter of inspection and discovery, as were the parties in the case of Constantine v. Scheidel, supra. It is the view and holding of the Court that the situation in the present case falls within the scope and holding of the case of Constantine v. Scheidel, supra, and that the plaintiff is entitled to contribution but not indemnity.

The situation as to indemnity or contribution is not necessarily changed by the fact that one of the concurrent tortfeasors may have been under a duty to the injured person to exercise a higher degree of care than the other. D. C. Transit System, Inc. v. Slingland, 1959, 105 U.S.App.D.C. 264, 266 F.2d 465, certiorari denied 80 S.Ct. 62. In that case a collision occurred between a common carrier bus and a United States mail truck, and a passenger in the bus was injured. The passenger recovered against the bus company. It sought indemnity or contribution from the United States. The United States Court of Appeals for the District of Columbia held that it was a case for contribution rather than indemnity notwithstanding the fact that the bus company was under a duty to exercise a higher degree of care to the passenger than was the driver of the mail truck. It added (at page 470 of 266 F.

2d) that neither the bus company nor the United States " * * * could be said to be 'the primary or principal wrongdoer' responsible for the whole loss."

In the present case it cannot be said that either the plaintiff or the defendant was the primary or principal wrongdoer or that the liability of either was primary or secondary.

On November 17, 1959, the Iowa Supreme Court handed down its opinion in the case of Hawkeye-Security Insurance Company, Inc. v. Lowe Construction Co., supra. In that case a collision occurred between a motor vehicle operated by an employee of one Nickol and a motor vehicle operated by one Mr. Leyendecker in which Mrs. Leyendecker was a passenger. Mr. Leyendecker was killed and Mrs. Leyendecker received serious injuries as a result of the collision. The Hawkeye-Security Insurance Company, the insurance liability carrier of Nickol, settled the Leyendecker claims. It then brought an action against the Lowe Construction Company. In its petition it alleged that the highway where the collision took place had been made slippery and hazardous by the negligence of the employees of the Lowe Construction Company in dropping dust, clay, and mud on the travelled portion of the highway, and that the collision and resulting injuries to the Leyendeckers were due to the combined negligence of the employees of its insured and the employees of the Lowe Construction Company. It asked for contribution for one-half of the amount paid by it in settlement of the Leyendecker claims. The motion of the defendant Lowe Construction Company to dismiss for failure to state a cause of action was overruled by the trial court. An interlocutory appeal from that ruling was granted by the Iowa Supreme Court. On appeal the ruling of the trial court was affirmed. The Iowa Supreme Court stated that it had no desire to retreat from its decisions in Best v. Yerkes, supra, and Constantine v. Scheidel, supra.

The parties in the present case discussed the well-known case of Union Stock Yards Co. of Omaha v. Chicago, B. & Q. R. Co., 1905, 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453. In that case one railroad delivered a car to a terminal railroad. The nut on the brake-staff was not fastened. An employee of the receiving railroad, while using the brake, was thrown from the car and sustained injuries. He recovered judgment therefor against the receiving railroad. After paying the judgment, the receiving railroad brought an action against the delivering railroad. The United States Supreme Court stated (at page 228 of 196 U.S., at page 229 of 25 S.Ct.):

"In the present case the negligence of the parties has been of the same character. Both the railroad company and the terminal company failed by proper inspection to discover the defective brake. The terminal company, because of its fault, has been held liable to one sustaining an injury thereby. We do not think the case comes within that exceptional class which permits one wrongdoer who has been mulcted in damages to recover indemnity or contribution from another."

The decision in that case was long prior to the case of Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. See Andromidas v. Theisen Bros., D.C.Neb.1950, 94 F.Supp. 150, 154. In so far as the case of Union Stock Yards Co. of Omaha v. Chicago, B. & Q. R. Co., supra, holds that indemnity was not permissible in the situation there involved, it would seem to be in accord with the Iowa law as exemplified by the case of Constantine v. Scheidel, supra. In so far as it holds that contribution was not permissible in the situation there involved, it would seem not to be in accord with the present Iowa law. See criticism of case by the Iowa Supreme Court in Best v. Yerkes, supra (at page 28 of 77 N.W.2d).

In support of its claim for indemnity the plaintiff cites and relies upon the case of Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 1953, 201 F.2d 408, 37 A.L.R.2d 1399. The opinions of

the trial court in that case appear under the name of Lawrence v. Great Northern Ry. Co., D.C.1951, 98 F.Supp. 746 and D.C.1952, 109 F.Supp. 552. In that case the Waylander-Peterson Company was, under contract with the Minnesota State Highway Department, engaged in the rebuilding of a bridge over the tracks of the Great Northern Railway Company. Lawrence, a switch foreman in the employ of the railway company, was struck by a timber which fell from the bridge while he was walking under it in connection with his duties as switch foreman. In an action against the railway company based on the Federal Employers' Liability Act, Lawrence charged that the defendant was negligent in having failed to exercise ordinary care to furnish him a safe place in which to work, and recovered a judgment for damages for the injuries sustained when he was struck by the timber. The railway company then sought indemnity from Waylander-Peterson Company. Indemnity was granted by the trial court. On appeal the action of the trial court was affirmed. In that case it appeared that Waylander-Peterson Company at the time of the mishap was in exclusive control of the part of the bridge from which the timber fell. On appeal Waylander-Peterson Company contended that in any event it was liable only for contribution and not for indemnity. The Court rejected that contention and held that under the Minnesota law the railway company was entitled to indemnity. In its opinion it cited Judge Nordbye's opinion, 109 F. Supp. 552, at page 555, wherein Judge Nordbye stated:

"Here, these parties were not *in pari delicto*. The railway company had no control over the construction of this bridge or of the workmen who were employed thereon. The railway company was required to operate its trains under the bridge and to direct its trainmen to perform their duties in and about the bridge. The repeated instances of timbers and debris falling from the bridge, which rendered the railway company liable under the Federal Employers' Liability Act, was a condition which the railway company did not create. Its liability arose because of the non-delegable duty which rested upon it to exercise reasonable care to furnish Lawrence a safe place to work. Any negligence attributed to it so as to render it liable to Lawrence arose by the wrongdoing of those in charge of the construction of this bridge * * *."

While, as noted, the Minnesota law was applicable in that case, yet, under the circumstances there disclosed, the railway company would doubtless have been entitled to indemnity under the Iowa law as well. However, it is the view of the Court that that case is distinguishable from the present case. In the present case the parties were in pari delicto in that each was guilty of negligence in the matter of inspection and discovery of the defect. In the present case it cannot be said that one was more at fault than the other, which was not the situation in the Minnesota case.

It is the holding of the Court that under the Iowa law the plaintiff is entitled to contribution from the defendant in connection with the Kleppe settlement. The right of one entitled to contribution to recover interest is the subject of an annotation. See 27 A.L.R.2d 1268. It is clear from the cases there cited that the plaintiff is entitled to interest at the legal rate from the date of payment to Kleppe. In Iowa the legal rate is five per cent. Section 535.2, Code of Iowa 1958 I.C.A.

It Is Hereby Ordered that judgment be entered in favor of the plaintiff and against the defendant for the sum of Thirty-Five Thousand and No/100 Dollars ($35,000.00) with interest thereon at the rate of five per cent (5%) per annum from October 16th, 1956.

It Is Further Ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment herein. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.